**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 20 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES S. JORDAN, JR.,

    Plaintiff - Appellant,

v.

UNITED STATES POSTAL
SERVICE, John E. Potter, Postmaster,

    Defendant - Appellee.

No. 02-5196

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-01-470-K(M))**

**Submitted on the briefs:**[*]

Jean Walpole Coulter of Jean Walpole Coulter and Associates, Inc., Tulsa, Oklahoma, and Brian A. Curthoys, Tulsa, Oklahoma, for Plaintiff-Appellant.

David I. O'Meilia, United States Attorney; Loretta F. Radford, Assistant U.S. Attorney, U.S. Department of Justice, Tulsa Oklahoma; and Eric J. Scharf, Managing Counsel, and Stephan J. Boardman, Counsel of Record, United States Postal Service, Washington, D.C., for Defendant-Appellee.

---

[*] After examining the briefs and appellate record, this panel has unanimously determined that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Therefore, this case is ordered submitted without oral argument.

Before **SEYMOUR**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

**McKAY**, Circuit Judge.

Appellant Mr. Jordan appeals from a judgment granted in favor of Appellee United States Postal Service on his claim pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791-793. He also appeals from the district court's ruling that although Appellee violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601-2654, Appellant "has no grounds for relief under the FMLA because he has shown no actual damages or grounds for equitable relief as a result of the retaliatory behavior of [Appellee]." Aplt. App. at 31.

The parties do not object to the relevant findings of fact entered by the district court after a bench trial on the Rehabilitation Act and the FMLA claims. See id. at 13-18. We summarize the facts as follows. Appellant began his relevant tenure of work for Appellee in Tulsa, Oklahoma, in 1994 as a part-time flexible clerk. From October 1996 through August 1997, and from February 1998 through April 1998, Appellant worked as a relief clerk at the Postal Source Data System ("PSDS"). Employee attendance is an absolute requirement for working at the PSDS. Appellant had excessive absences from work. Of the 254 days

Appellant was scheduled to work during the October 1996 through August 1997 period, Appellant took forty-nine days of FMLA leave, eleven days of non-FMLA leave, seventeen days of annual leave, and eight hours of emergency leave. Of the fifty work days Appellant was scheduled to work during the February 1998 through April 1998 period, he used two days of FMLA leave, five days of non-FMLA leave, and four days of annual leave.

On May 1, 1997, shortly after being diagnosed with post-traumatic stress disorder, severe anxiety, paranoia, bipolar personality, and depression, Appellant requested sixty days of medical leave, which was granted. On July 5, 1997, he returned to work. On July 28, 1997, he requested a transfer from Tulsa to the Dallas postal facility due to his disability.

Although the Tulsa facility recommended that the Dallas facility accept the transfer request, each postal district makes its own decision regarding employee transfers. In fact, the collective bargaining agreement between Appellee and its employees mandates that the facilities operate independently of each other with respect to employee transfers. Therefore, under the collective bargaining agreement, the Tulsa postal facility could not force the Dallas facility to take an employee who has requested a transfer. In September 1997, the Dallas postal facility denied Appellant's transfer request because of his unexplained excessive absences, but informed Appellant by letter that his transfer request would be

reconsidered if he explained his absences. Appellant did not respond to this letter.

On August 7, 1997, Appellant and his union steward met with Appellant's supervisor. At that meeting, Appellant's supervisor informed him that if he had further absences he would be placed on restricted sick leave and be given a letter of warning. Three days after this meeting Appellant's position was reposted. The notice of this reposting gave Appellant an opportunity to rebid his job.

On August 20, 1997, Appellant received a letter from Appellee informing him that he was involuntarily reassigned to the Airport Mail Facility as an unassigned regular, effective immediately. The reassignment occurred prior to the conclusion of the rebidding for his previous job, contrary to the Tulsa facility's traditional procedure of allowing an employee to remain in his current position until the bidding process is complete. Appellee offered no documentation supporting the necessity for the early reposting of Appellant's job. At trial, a co-worker testified that Appellant's supervisor reposted Appellant's position to get rid of him. The co-worker further testified that when Appellant returned to work following his FMLA leave, the supervisor's attitude toward Appellant was increasingly derogatory.

The same day that he was notified of his new status as an unassigned regular, Appellant wrote a letter containing a general implied threat of violence

directed at his supervisor, the PSDS, and the personnel services for the Tulsa postal facility. Appellant's supervisor forwarded the letter to a threat assessment team, and on September 3, 1997, Appellant was placed on emergency leave without pay as a result of this letter. On September 10, 1997, Appellant sent a letter apologizing for his earlier threatening letter.

On September 23, 1997, Appellee notified Appellant that he was terminated. After Appellant filed a grievance, his termination was reduced to a six-month suspension (from October 31, 1997, until February 17, 1998) without pay. After further settlement negotiations, Appellee paid Appellant full back pay for the six-month suspension, with interest, and restored all leave that would have accrued during this period. Although the district court did not make a finding of fact on when Appellee received his back pay, it is clear from the record, and undisputed by Appellee, that back pay was given to Appellant in June 1998, about eight months after his suspension began.

In August 1999 Appellant returned to work, but, three months later, at the age of thirty-seven, he applied for and now receives disability retirement. Supp. to Rec., at 46-47. Disability payments are based on his psychologist's opinion that Appellant's mental disorders prevent him from returning to "any position at the U.S. Post Office." Id. at 95.

After a bench trial, the district court concluded that Appellant was disabled

under the Rehabilitation Act but that Appellee had not violated the Act because it had offered all reasonable accommodations to Appellant. On the FMLA claim, the court found that Appellee violated Section 2615 of the FMLA by retaliating against him for exercising his FMLA rights and further found that Appellant "actually lost his wages and benefits during his time of suspension." Aplt. App. at 28. However, the court did not award damages on the ground that Appellant's "wages and benefits were already returned to him by the USPS, and to award them again would be granting a windfall to Plaintiff." Id.

On appeal, Appellant argues that the district court erred in holding that Appellee's failure to transfer him to Dallas did not violate the Rehabilitation Act and also erred in refusing to award liquidated damages and attorneys' fees for the FMLA claim. We review these issues of law *de novo*. Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1277 (10th Cir. 2001).

We first address the Rehabilitation Act claim. The district court concluded as a matter of law that Appellee offered Appellant all reasonable accommodations, including allowing him to work shortened hours and assisting him in requesting a transfer to Dallas. Aplt. App. at 20-21. We affirm the district court's conclusion that Appellee offered all reasonable accommodations to Appellant and, therefore, did not violate the Rehabilitation Act.

"In general, an accommodation is any change in the work environment or in

the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities." 29 C.F.R. pt. 1630 App. 1630.2(o) (2003). Although under some circumstances an employer may offer a reassignment to a vacant position to accommodate a disability, in this case Appellee was not required to transfer Appellant from Tulsa to Dallas in order to comply with the Rehabilitation Act.

Appellant argues that "[t]he only explanation given at trial for denial of Jordan's request for a transfer was the terms of the USPS collective bargaining agreement." Aplt. Br. at 19. But, Appellee's collective bargaining agreement (which mandates that each postal facility operates independently with respect to employee transfers) was only part of the explanation given for denying the transfer. The other critical fact–conceded by Appellant–is that, although Appellee told him it would reconsider his transfer request if he explained his absences, Appellant did not offer any explanation. In fact, Appellant gave no response to the Dallas facility's letter advising him that it would reconsider a transfer if Appellant explained his excessive absences.

Therefore, even if we agreed with Appellant that Appellee is "a single employer with multiple locations for purposes of accommodating Jordan's disability," Aplt. Br. at 5, and further agreed that the collective bargaining agreement cannot be enforced here, Appellant's claim would still fail since it was

his failure to explain his absences, as requested, that caused his transfer denial to become final. For this reason, we agree with the district court that Appellee offered all reasonable accommodations required under the Rehabilitation Act, including offering him a shortened work day, facilitating a transfer request, and recommending that the transfer to Dallas be granted. Because we conclude that Appellee reasonably accommodated Appellant, we do not reach Appellee's alternative argument that Appellant was not a qualified individual with a disability under the Rehabilitation Act.

Appellant also appeals the judgment on his FMLA claim. The district court found liability under the FMLA on grounds that Appellee reposted Appellant's job before the rebidding process was completed (contrary to its internal policy), reassigned him to a different job before his job had been filled, subjected him to derogatory treatment, and terminated him. Despite finding liability, the court held that since Appellee restored all lost wages and benefits before trial, the FMLA does not permit Appellant to recover any additional damages or attorneys' fees.

Appellee does not appeal its liability; rather, it asks us to affirm the district court's conclusion that the FMLA does not allow Appellant to recover liquidated damages or attorneys' fees because full back pay was restored before trial. The statute provides for damages as follows:

> Any employer who violates [the FMLA] shall be liable to any
> eligible employee affected--

(A) for damages equal to--
(i) the amount of--
(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation . . . ;
(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of liability to the amount and interest determined under clauses (i) and (ii), respectively; and
(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617 (1999).

Thus, as relevant here, Appellee "shall be liable" to Appellant for wages "denied or lost," plus interest, "*and* an additional amount as liquidated damages equal to the sum of [the lost or denied wages and interest]." Id. (emphasis added). It is undisputed that Appellant's wages were unlawfully denied during his six-month suspension. Appellee does not appeal the district court's finding that because of its retaliatory acts, Appellant "actually lost his wages and benefits

during his time of suspension." Aplt. App. at 28. Therefore, if Appellee had not paid Appellant his back pay, there would be no question that Appellant would be entitled to not only his lost wages and interest but also entitled to liquidated damages. Id.; Atchley v. The Nordam Group, Inc., 180 F.3d 1143, 1151-52 (10th Cir. 1999). The difficulty in applying the FMLA damages provision here arises because Appellee paid Appellant full back pay before trial, albeit with a significant delay of about eight months after his suspension began and about four months after it ended. Therefore, the legal issue before us is whether wages that are unlawfully denied but restored before trial, but after a significant delay, are "denied or lost" wages under the FMLA. We hold that they are.

While the FMLA does not specifically state that wages "denied or lost" include wages that are temporarily lost but later restored, the statute does make clear that employees who lose wages are not fully compensated when their wages are restored. Instead, an employer violating the FMLA (without a showing of good faith, which Appellee does not assert) must restore the lost wages, with interest, and pay additional liquidated damages. Since the FMLA makes employers liable for both lost wages and liquidated damages, we cannot conclude that under the FMLA, an employer like Appellee, who denies an employee his wages but restores them prior to trial, but after a significant delay, avoids liability for liquidated damages. If this were the case, employers who wrongfully denied

wages could escape liability for liquidated damages by simply restoring the lost wages at any time before trial. We think this result cannot be squared with the language or structure of the FMLA damages provision. Therefore, we conclude that temporarily lost wages that are restored prior to trial, but after a significant delay, are "lost or denied" for purposes of calculating liquidated damages under the FMLA.

This conclusion is bolstered by the legislative history and case-law interpretations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which we look to for guidance in interpreting FMLA damages because of the similarity of the damages provisions. See S. Rep. No. 103-3, at 35 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 37 (the FMLA's "enforcement scheme is modeled on the enforcement scheme of the FLSA . . .[and t]he relief provided in FMLA also parallels the provisions of the FLSA."); see also Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 968-69 (10th Cir. 2002) (interpreting FMLA cost provisions in the same way they are interpreted under the FLSA). Interpretations of the FLSA damages provision are particularly helpful here, since it provides employees with the same non-discretionary damages for lost compensation as the FMLA–unpaid wages plus liquidated damages in an amount equal to the unpaid wages. 29 U.S.C. § 216(b) ("Any employer who violates the [FLSA] shall be liable to the employee or employees affected in the amount of

their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

In Renfro v. City of Emporia, Kan., an FLSA case, we held that "[t]he purpose for the award of liquidated damages is the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." 948 F.2d 1529, 1540 (10th Cir. 1991) (internal citations and quotations omitted). We conclude that liquidated damages under the FMLA serve the same purpose. We agree with the Second Circuit that "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).

With these purposes of liquidated damages in mind, we find the Eighth Circuit's handling of a factually similar case brought under the FLSA persuasive here. In Braswell v. City of El Dorado, Ark., the district court ruled on summary judgment that the employer violated the FLSA by not paying overtime wages. 187 F.3d 954, 956 (8th Cir. 1999). Seven weeks before trial, the employer restored all but approximately $3,000 of the improperly withheld wages. Id. The Eighth Circuit held that, in awarding back pay, the district court properly awarded only the unrestored amount. However, in calculating liquidated damages, the

Eighth Circuit reversed the district court's award of an amount equal to the unrestored wages and held that the FLSA required an award of liquidated damages equal to the full amount of back pay notwithstanding the employer's voluntary payment of part of these damages before trial. Id. at 957. We also conclude that liquidated damages are statutorily calculated, under both the FLSA and the FMLA, based on the full amount of wages that were denied or lost because of a statutory violation.

The district court here ruled that "as Plaintiff has proven no actual damages, the Court cannot award liquidated damages," citing to Walker, 240 F.3d at 1276-78. Aplt. App. at 29-30. But we hold that Appellant's temporarily lost wages are actual damages in the sense that they are properly categorized as wages "denied or lost" under the FMLA. Further, Walker is not at odds with this holding since, in Walker, the plaintiff did not claim that she lost wages, temporarily or otherwise. Rather, the plaintiff there based her FMLA claim solely on an allegedly wrongful five-day suspension for which she was fully paid with disability payments. 240 F.3d at 1277.

The district court expressed concern about awarding a judgment that amounted to a "windfall" to Appellant if Appellee had to pay liquidated damages in addition to the pre-trial back pay. But the non-discretionary calculation of damages under the FMLA should not be considered a "windfall," but rather a

congressional judgment, enforced by the courts, designed to compensate employees for the obscure damages that occur when one wrongfully loses wages, even if only temporarily.

For all these reasons, after finding that Appellant suffered the loss of his wages for several months due to Appellee's retaliatory acts, the district court was obligated to award liquidated damages in an amount equal to his back pay, plus interest, less any pre-trial payments. We reverse and remand the FMLA claim for proceedings to determine a proper award of liquidated damages and attorneys' fees.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.