# United States Court of Appeals
## For the First Circuit

No. 07-2670

RICHARD DENNIS,

Plaintiff, Appellant,

v.

OSRAM SYLVANIA, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella, and Lipez, Circuit Judges.

Kenneth J. Barnes, with whom Upton & Hatfield, LLP, Nancy Richards-Stower, and Law Offices of Nancy Richards-Stower, was on brief for appellant.
Bruce W. Felmly, with whom Jennifer L. Parent and McLane, Graf, Raulerson & Middleton Professional Association, was on brief for appellee.

December 10, 2008

**TORRUELLA**, **Circuit Judge**.  Plaintiff-Appellant Richard Dennis appeals the district court's decision to grant Defendant-Appellee Osram Sylvania, Inc.'s ("Sylvania") motion for summary judgment on a claim involving New Hampshire's anti-discrimination statute, N.H. Rev. Stat. Ann. § 354-A.  Dennis also appeals the district court's decision to deny "as moot" two discovery motions: (1) a motion to compel discovery of privileged documents and (2) a motion for an extension of time pursuant to Fed. R. Civ. P. 56(f).  For the reasons stated below, we affirm.

## I.  Background

Dennis was employed with Sylvania from August 1995 to March 24, 2004, at which date he was terminated.  At the time of his firing, Dennis was the Associate Development Program Manager in Sylvania's human resources department.  His responsibilities included representing the company at recruitment fairs on campuses and overseeing Sylvania's internship program.

Dennis claims that Sylvania retaliated against him because he gave deposition testimony critical of the company in an internal matter brought by Nancy Green, a former employee of Sylvania.  Green had alleged that Sylvania retaliated against her because she had filed a sexual harassment complaint against a co-worker.  As the lead investigator of Green's complaint, Dennis was deposed on February 5, 2004.  Dennis cites to several instances in his deposition where he was critical of Sylvania's response to

-2-

Green's claims, such as the company's "soft punishment" of the alleged harassers and the slow pace with which it conducted the investigation of her claims.[1]

In addition, Dennis points to certain actions and statements by Sylvania's lawyers demonstrating their dissatisfaction with his testimony. For example, Dennis claims that Paul Beckwith, Sylvania's legal counsel, was "hostile" to him during the deposition. Dennis also alleges that Beckwith raised his voice in response to Dennis' inquiries about the strength of the Green case, exclaiming that he "doesn't have time for this shit." Dennis further claims that during a break, when he sought guidance from Beckwith regarding whether he had to reveal his knowledge of a company manager's romantic involvement with a subordinate, Beckwith, "in a forceful manner, ordered him to answer 'yes,''no,' or 'I don't recall.'"[2] Dennis states that Beckwith

_____

[1] Dennis further noted in his deposition that Sylvania's employees perceived that the alleged harassers "could do what they wanted because they were friends with [the manager]"; that there was a justified perception that it would be futile to file complaints against the manager's friends; that it was inappropriate for Sylvania to have a public team meeting on the Green matter; that Green was "justified in being upset" by Sylvania's handling of her complaint; and that Sylvania's issuance of a warning letter to Green in response to her reaction at the team meeting was "the stupidest thing [Dennis] heard."

[2] Dennis also notes a dispute regarding whether he met with Beckwith for a deposition preparation session at Sylvania on January 22, 2004. Dennis states that he does not recall any meeting with Beckwith prior to his February 5, 2004 deposition and contends that he was out of the country on January 22, 2004. This dispute is not material to the outcome of this case.

told him that the second part of his testimony was not as helpful as the first part. In addition, Dennis alleges that Sylvania's in-house counsel, Nicole Vient (formerly Nicole "Buba"), "rolled her eyes" during his deposition, indicating her unhappiness with Dennis' testimony.

Sylvania disagrees that Dennis gave testimony critical of the company, arguing instead that the testimony "strongly supported" Sylvania's defense of Green's claims.[3] Furthermore, Vient does not recall if she rolled her eyes during Dennis' deposition and insists that she "did not in any way criticize his performance at the deposition." Beckwith, for his part, denies instructing Dennis during a break to answer questions in any particular way.

On February 6, 2004, the day after Dennis' deposition testimony, Vient began investigating Dennis in reference to a complaint, received by the company on January 28, 2004, from Miguel Molina. Molina, an unsuccessful applicant for re-employment, claimed that Dennis had subjected him to "inappropriate and unprofessional" conduct. The investigation revealed that Dennis, when meeting with Molina, had made reference to Molina's problems

---

[3] In the proceeding below, the district court stated that "[w]hile Dennis did make several comments critical of Sylvania at his deposition, his testimony does not appear to have been particularly harmful to Sylvania's legal position, and actually strongly supported the company's position on a key issue of retaliation." Dennis v. Osram Sylvania, Inc., No. 06-CV-029-SM, 2007 WL 2783369, at *8 n.6 (D.N.H. Sept. 24, 2007).

-4-

with his taxes and his rent. Also, it revealed that Dennis had shared these details as well as details regarding Molina's marital life with Molina's potential supervisor at the company.

Pamela Tracey, Sylvania's in-house counsel who oversaw Vient's investigation, subsequently met with Dennis' supervisors, Geoffrey Hunt and William Franz, to discuss these incidents.[4] They decided that a warning should be placed in Dennis' file. Franz documented Dennis' conduct towards Molina in a February 23, 2004 internal communication to Dennis. He concluded that Dennis' actions were "entirely inappropriate" and requested Dennis to sign a statement to that effect. Dennis refused to sign the statement and told Franz that he viewed the Molina investigation and warning letter as retaliation for his deposition testimony in the Green matter. Dennis also accuses Franz of "look[ing] away" and responding that "he knew nothing about [the deposition]." Franz confirmed that he told Dennis that he did not know anything about the deposition, but does not recall "looking away."

On March 24, 2004, Sylvania terminated Dennis. In his deposition testimony, Franz stated that Dennis' position was "severely weakened" by the Molina matter as well as by a 2001

---

[4] Tracey is Sylvania's Senior Labor and Employment Counsel; Hunt is Sylvania's Senior Vice President of Communications and Human Resources; and Franz is Sylvania's Human Resources Director.

complaint by another former employee, Kim Serrechia.[5]  Franz also states that he recommended terminating Dennis because his performance was affected by "extreme duress" due to family issues and because of a reduction in force in Sylvania's equipment development department, the latter forcing Franz to choose between Dennis and Leah Weinberg, whom Franz referred to as a "high achieving human resources manager."  Franz subsequently informed Hunt, his supervisor, of his decision and Hunt approved.

After initially filing his complaint with the New Hampshire Commission for Human Rights ("Commission"), Dennis filed an action in Rockingham County Superior Court in New Hampshire alleging retaliation under N.H. Rev. Stat. Ann. § 354-A.[6]  The case was then removed to the United States District Court for the

_____

[5]  On April 11, 2001, Dennis signed a written warning statement that concluded that Dennis had engaged in the inappropriate use of company e-mail by sending religious and inspirational messages to Serrechia.  Also, the warning stated that Dennis failed to use "appropriate managerial judgment expected from a Human Resources professional in an employee relations matter," citing Dennis' "numerous conversations of an intensely personal nature" with Serrechia.  Dennis maintains that Franz told him that "he did not believe Serrechia's allegations" and all references to the Serrechia matter would be removed from Dennis' file.  He further points out that although his post-termination file made no reference to the Serrechia matter and that his performance evaluations during this period praised him for his "fine work" and did not mention the Serrechia allegations, the matter "reappeared" after Dennis filed a complaint with the New Hampshire Commission for Human Rights.

[6]  Dennis successfully removed his case to the Superior Court because he had exhausted his administrative remedies and because it had been over 180 days since he had filed his complaint with the Commission.  N.H. Rev. Stat. Ann. § 354-A:21-a.

-6-

District of New Hampshire. In the proceeding below, the district court granted Sylvania's motion for summary judgment stating that Dennis had failed to establish a prima facie case of retaliation because Franz and Hunt, the individuals responsible for terminating Dennis, "knew nothing about plaintiff's Green deposition." Dennis v. Osram Sylvania, Inc., No. 06-CV-029-SM, 2007 WL 2783369, at *8 (D.N.H. Sept. 24, 2007). The district court alternatively concluded that even if Dennis had established a prima facie case, Sylvania had fired Dennis for legitimate non-discriminatory reasons such as his poor work performance and the fact that Franz wanted to retain another employee instead of Dennis because of the company's reduction in force. Id. at *7. Furthermore, the district court explained that summary judgment was appropriate because the factual disputes arising during Dennis' deposition testimony in the Green matter with Beckwith and Vient were not material to the resolution of Dennis' case. Id. at *8-9.

## II. Dennis' Motion for Summary Judgment

### A. Standard of Review

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)(citing Fed. R. Civ. P. 56(c)). "A 'genuine' issue is

-7-

one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986)). "We review summary judgment rulings de novo, construing the record evidence in the light most favorable to the nonmoving party." Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003).

"Even in retaliation cases, 'where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007) (quoting Benoit, 331 F.3d at 173); see also Thompson, 522 F.3d at 175 ("When considering arguments for summary judgment, 'we must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation.'" (quoting Abbott v. Bragdon, 107 F.3d 934, 938 (1st Cir. 1997))).

We will reverse "only if, after reviewing the facts and making all inferences in favor of the non-moving party . . . the evidence on record is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008) (internal quotations omitted).

-8-

As a preliminary matter, we note Dennis' citation to the the Supreme Court's ruling in <u>Reeves</u> v. <u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 151 (2000), for the proposition that this court at summary judgment must "disregard all evidence favorable to the moving party that the jury is not required to believe." According to Dennis, our consideration of Sylvania officials' declarations are impermissible under <u>Reeves</u> because the officials are interested parties. See <u>id.</u> ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.")(internal quotations omitted).

Dennis misreads the scope of <u>Reeves</u>. At summary judgment we need not exclude all interested testimony, specifically testimony that is uncontradicted by the nonmovant. See <u>Lauren W. ex rel. Jean W.</u> v. <u>DeFlaminis</u>, 480 F.3d 259, 271-72 (3d Cir. 2007) ("We cannot believe that the law precludes a party from presenting his own testimony on a summary judgment motion . . . . The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness."). Indeed, the exclusion of interested testimony would make it difficult for an employer to present a legitimate non-discriminatory reason when defending against a retaliation claim.

-9-

As the Sixth Circuit has noted, a rule barring all testimony from interested witnesses would "lead[] to absurd consequences because defendants will often be able to respond only through the testimony of their employees." Stratienko v. Cordis Corp., 429 F.3d 592, 598 (6th Cir. 2005) (internal quotations omitted). Here, Dennis' argument is unpersuasive given his failure to present evidence to contradict the declarations of Sylvania officials in which they present a non-retaliatory motive.

**B.  Applicable Law**

N.H. Rev. Stat. Ann. § 354-A:19 states that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to discharge, expel, or otherwise retaliate or discriminate against any person because he has . . . testified or assisted in any proceeding under this chapter."

The New Hampshire Supreme Court looks to and finds "instructive" federal standards established under Title VII, 42 U.S.C. § 2000e et seq., in resolving retaliation claims under N.H. Rev. Stat. Ann. § 354-A. Madeja v. MPB Corp., 149 N.H. 371, 378-79, 821 A.2d 1034, 1043 (2003). Thus, to establish a prima facie case of retaliation under either Title VII or N.H. Rev. Stat. Ann. § 354-A, the plaintiff must show that "(1) she engaged in a statutorily-protected activity; (2) she suffered an adverse employment action; and (3) the protected activity and the adverse

employment action were causally connected." Id. at 378 (citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 22 (1st Cir. 2002)).

Under New Hampshire law, "[i]f there is only circumstantial evidence of retaliation," as Dennis alleges here, a "'pretext' approach applies." In re Montplaisir, 147 N.H. 297, 300, 787 A.2d 178, 181 (2001) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1983)). This "pretext" approach provides that "an employee who carries her burden of coming forward with evidence establishing a prima facie case of retaliation creates a presumption of discrimination, shifting the burden to the employer to articulate a legitimate, non-discriminatory reason for the challenged actions." Billings v. Town of Grafton, 515 F.3d 39, 55 (1st Cir. 2008). "'If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for [the challenged actions] was in fact a pretext for retaliating . . . .'" Id. (quoting Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 336 (1st Cir. 2005) (alteration in original)). Pretext can be demonstrated by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could rationally find them unworthy of credence and [with or without the additional evidence and inferences properly drawn therefrom] infer that the employer

-11-

did not act for the asserted non-discriminatory reasons." Id. at 55-56 (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (alteration in original)).

## C. Discussion

In the instant case, it is a close question whether Dennis can establish a prima facie case of retaliation. Sylvania does not dispute that Dennis met the first two prongs of the prima facie test: Dennis (1) engaged in protected conduct by participating in the Green deposition and (2) experienced an adverse employment action by way of his termination. However, with respect to the third prong, Dennis relies on a series of strained inferences to establish a causal connection between the two. He states:

> if a jury believed Dennis's testimony . . .
> then it could infer . . . the attorneys
> believed that some of Dennis's testimony could
> have a negative effect on the company's
> position in the Green case; that [Vient]
> conducted her investigation into the Molina
> allegations with anger or resentment over
> Dennis's unflattering testimony the day
> before; and that the lawyers conveyed their
> concerns about the testimony to one or more of
> Sylvania's in-house personnel.

(Emphasis in original).

Dennis further emphasizes that Tracey, as Vient's direct supervisor, was responsible for supervising Vient's investigation into Molina's complaint. Dennis reasons that "[a] jury could infer that Tracey and [Vient] talked regularly about [Vient's]

-12-

investigation of Dennis, and that Tracey heard [Vient's] concerns about Dennis's deposition testimony which had taken place the day before the investigation began." (Emphasis in original). Because Tracy "directly advised" Franz on the proper course to take in the Molina matter, Dennis contends that a jury could infer that Franz' decision to recommend Dennis' termination was influenced by Dennis' testimony in the Green matter. Moreover, Dennis asserts that Beckwith and Vient's concern with his testimony showed that they had a "motive to retaliate against him and a motive to communicate among the management group about these issues."

For purposes of summary judgment we are required to draw every reasonable inference in favor of the nonmoving party. However, at this stage we need not credit inferences that "rely on tenuous insinuation." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 743 (1st Cir. 1995) (internal quotations omitted). Moreover, the nonmovant still has "the burden of producing specific facts sufficient to deflect . . . summary judgment . . . ." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

While Dennis insists that his retaliation claim naturally flows from "a straightforward series of reasonable inferences," he has failed to provide specific facts indicating that his termination was caused by his allegedly unfavorable testimony in the Green matter. Instead, Dennis speculates about alleged communications between Sylvania's counsel and his direct

-13-

supervisors and imputes these attorneys' alleged motives and displeasure with Dennis' testimony to Franz and Hunt, the actual decisionmakers responsible for his firing.

Dennis' contention that a jury could reasonably string together these inferences is speculative, especially in view of the fact that the only evidence that Dennis provides to demonstrate that Franz and Hunt knew about his deposition testimony is Franz' alleged reaction when conversing with Dennis about the Molina warning letter. Franz' body language of "looking away" and his statement that "he knew nothing about [Dennis' unfavorable testimony]" in response to Dennis' allegation that the firing was in retaliation for Dennis' deposition in the Green case is insufficient for a jury reasonably to infer that Franz or Hunt shared Vient and Tracy's alleged retaliatory sentiments. In addition, Dennis offers no evidence that Franz or Hunt, in arriving at their decision to terminate Dennis, consulted with anyone possessing a motive to retaliate against Dennis. "Nothing in the record supports an inference of complicity." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31-32 (1st Cir. 2007) (holding that causation prong was unmet where plaintiff failed to provide sufficient proof that individual responsible for plaintiff's discharge consulted with and shared sentiments with middle manager who allegedly possessed retaliatory motive).

In addition to Dennis' inferential reasoning, we also consider the nearness in time between Dennis' deposition testimony in the Green case and his termination. As we have stated, "Our law is that temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)(quoting Mariani-Colón v. Dep't of Homeland Sec., ex rel. Chertoff, 511 F.3d 215, 224 (1st Cir. 2007)). Given our analysis below, however, we need not decide whether the mere fact that less than two months elapsed between Dennis' deposition and his termination is sufficient to establish a prima facie case of retaliation.

Though we doubt Dennis could prove causation, we nevertheless recognize that the employee's burden to establish a prima facie case in the retaliation context "is not an onerous one." Calero-Cerezo, 355 F.3d at 26. However, even assuming that Dennis has established a prima facie case, his claim still fails because he cannot show that his termination was pretextual. Specifically, Dennis has not adequately countered the legitimate non-discriminatory reasons Sylvania has proffered for terminating Dennis. These reasons include Dennis' history of misconduct as well as Sylvania's reduction in force argument.

As evidence of pretext, Dennis argues (1) that Sylvania had "shifting rationales" for firing Dennis and (2) that there is

-15-

a material dispute as to whether Dennis actually had a history of misconduct. With respect to the former, Dennis asserts that Sylvania's March 2005 response to Dennis' complaint to the Commission cited only his history of misconduct, while Franz' November 2006 deposition identified the reduction in force as the true reason for Dennis' dismissal. Regarding the alleged material dispute as to his history of misconduct, Dennis argues that the Serrechia matter should not be given any credence because it was allegedly purged from his file and that the Molina matter by itself did not warrant his termination.

Both of Dennis' arguments suggesting pretext are unconvincing. First, Sylvania did not shift its rationale for terminating Dennis. The mere fact that Sylvania failed to include the reduction in force reasoning in its March 2005 response does not mean that it changed its story. This is especially true given the fact that the record reflects that Franz presented the reduction in force argument as early as October 2005 in a Commission interview -- over a year before the November 2006 deposition that Dennis cites for the alleged inconsistency.

Second, the dispute surrounding Dennis' history of misconduct is not material because Sylvania had another reason to terminate Dennis' employment which was not contradicted. Franz explicitly stated in his deposition testimony that even if Molina had fabricated his complaint against Dennis, he would still have

replaced Dennis with Weinberg because of the reduction in force. Thus, even if we credit Dennis' argument that the Serrechia complaint was removed from his file and that Dennis' misconduct in the Molina matter by itself does not rise to a "firing offense," Dennis would still lose: Sylvania's decision to replace Dennis with the better performing Weinberg as part of its reduction in force argument is a "clear, specific reason[]" for his termination separate from any retaliatory animus.[7] Id. Dennis "has failed to point to specific facts that would demonstrate any sham or pretext intended to cover up defendant's retaliatory motive." Id. Moreover, we should exercise caution in second guessing Sylvania's employment decisions. Courts should not act as "'super personnel departments,' substituting their judicial judgments for the business judgments of employers." Bennett, 507 F.3d at 32 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)).

### III. Dennis' Discovery Motions

Dennis additionally appeals the district court's denial of his motion to compel and his motion for extension of time under Fed. R. Civ. P. 56(f).[8] This court reviews both motions under an

---

[7] Because Dennis does not dispute much of the conduct that formed the basis of the Molina warning letter, Sylvania still could have partially relied on the conduct in the Molina matter in deciding that Weinberg was the more valuable employee.

[8] As noted above, after granting Sylvania's motion for summary judgment, the district court denied both these discovery motions as moot.

-17-

abuse of discretion standard. Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996)("It is well settled that the trial judge has broad discretion in ruling on pre-trial management matters, and we review the district court's denial of discovery [and its denial of a Rule 56(f) motion] for abuse of its considerable discretion.")(internal citations omitted)). We note that "[a]ppellate courts seldom intervene in discovery questions" and that "[t]he standard of review in discovery matters is not appellant-friendly." Modern Cont'l/Obayashi v. Occupational Safety & Health Review Comm'n, 196 F.3d 274, 281 (1st Cir. 1999) (internal quotations omitted). "The court of appeals will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party." Id.

In the proceeding below, Dennis moved to compel six documents Sylvania withheld on the basis of attorney client and work product privilege. Four of these documents pertain to the Serrechia complaint and the other two deal with the Molina matter. Dennis argues that these documents are relevant because they could shed light on the misconduct Sylvania partially relied upon for terminating Dennis.

We need not reach the question of whether the district court abused its discretion in denying Dennis' motion to compel because Dennis' access to those documents would not have changed

the outcome in this case. As we noted above, Dennis has not met his burden of showing that Sylvania's reduction in force rationale for terminating Dennis was pretextual. Dennis does not allege that these documents would yield any information linking Sylvania's reduction in force argument to retaliatory animus.[9]

We are equally unsympathetic to Dennis' appeal of the district court's ruling on his Rule 56(f) motion. Dennis argues that the district erred by denying him additional time to file his opposition to Sylvania's motion for summary judgment. In particular, Dennis contends that he was awaiting the court's rulings on his motion to compel and needed more time to obtain discovery of Weinberg's personnel documents and other documents pertaining to Sylvania's reduction in force.

We have stated that "Rule 56(f) serves a salutary purpose within the summary judgment framework. When a party confronted by a motion for summary judgment legitimately needs additional time to marshal the facts necessary to mount an opposition, the rule provides a useful safety valve." Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 10 (1st Cir. 2007). "Deployed appropriately, '[t]he rule . . . safeguard[s] against judges swinging the summary judgment axe too hastily.'" Id. (quoting Resolution Trust Corp. v.

---

[9] Notably, the Serrechia documents were dated prior to Dennis' deposition in the Green matter; thus, they cannot possibly contain any relevant information relating to Sylvania's alleged retaliatory motives with respect to its reduction in force.

N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994))(alterations in original).  Under Rule 56(f):

> the litigant must submit to the trial court an affidavit or other authoritative document showing (i) good cause for his inability to have discovered or marshaled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion.

Id.  We have warned that "Rule 56(f) is not designed to give relief to those who sleep upon their rights" and that one who seeks a favorable ruling under Rule 56(f) "must demonstrate due diligence both in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion has surfaced."  Id. at 10-11.

Here, even if the documents Dennis were to obtain through this additional discovery raised a material dispute concerning Sylvania's reduction in force rationale, the request was untimely. The record indicates that on January 25, 2006, Dennis' counsel requested the Commission's October 2005 interview notes with Franz. In these notes, Franz discusses the company's plan to eliminate Weinberg's position and Franz' opinion that she was a more valuable employee.  Although Dennis states that Sylvania "fails to allege what date Dennis received the copies and that the interview notes (taken by the Commission investigator) do not contain the expanded

information revealed during Franz' deposition on November 16, 2006," he does not deny receiving these notes well before Sylvania's motion for summary judgment. Furthermore, even if we accept Dennis' contention that he only learned the true extent to which Sylvania relied on the reduction in force rationale during Hunt and Franz' November 16, 2006 depositions, Dennis still did not file his Rule 56(f) motion until more than thirty days after the depositions, and nearly three weeks after Sylvania filed its motion for summary judgment. Regardless of whether Dennis' Rule 56(f) motion was a delaying tactic as Sylvania maintains, Dennis should not be entitled to the benefits of Rule 56(f) given the amount of time he allowed to lapse between his knowledge of Sylvania's reduction in force justification and the filing of his Rule 56(f) motion. Dennis neither suffered any manifest injustice nor any substantial prejudice.

For the forgoing reasons, we affirm the district court's order.

**Affirmed**.