[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11600
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00559-SCJ


GABRIEL J. WOODS,

                                                        Plaintiff-Appellant,

versus

DELTA AIR LINES INC.,
DAL GLOBAL SERVICES LLC,
DEC LEE,

                                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(December 8, 2014)

Before HULL, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

In this 42 U.S.C. § 1981 action, Plaintiff-Appellant Gabriel Woods appeals the district court's order granting summary judgment to the Defendants-Appellees' Delta Air Lines, Inc. ("Delta"); DAL Global Services, LLC ("DGS"), a wholly owned subsidiary of Delta and his former employer; and Declan Lee, a Managing Director of Delta. Plaintiff Woods and Defendant Lee both worked earlier at Northwest Airlines, Inc. ("Northwest"). Plaintiff Woods's § 1981 claim alleged that his 2010 termination at DGS was in retaliation for his 1998 charge of race discrimination made against Defendant Lee at Northwest. After review, we affirm.

## I.  BACKGROUND

### A.    Woods's Employment with Northwest

In the summer of 1997, Northwest hired Plaintiff Woods as a senior engineer. Defendant Declan Lee was Woods's second-level supervisor at Northwest.

In July 1998, Plaintiff Woods, who is African American, attended a meeting with Defendant Lee and other Northwest engineers, all of whom were white. During the meeting, Lee jokingly said that he could "turn boys like you into kings," which Woods believed was an attempt to degrade him as an African American male and denigrate his prior work experience at Boeing. The next day, Woods went to Lee's office and told Lee he was offended by the comment's "racist overtones."

2

Two weeks later, Woods was terminated at Northwest by his immediate supervisor and Lee. The reason Woods was given for his termination was that he spent excessive time on the internet and received and sent inappropriate personal emails. It is undisputed that, as part of his termination, Woods was designated "ineligible for rehire" at Northwest. Following his 1998 termination, Woods filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), but did not file suit after receiving his right to sue letter.

## B.    Northwest Merger with Delta

Over ten years later, in October 2008, Delta bought Northwest, and the two companies began merging operations. As part of the merger, Delta and Northwest had to integrate their aircraft parts and maintenance systems. Defendant Lee, now a Delta employee and the Managing Director – Engineering and Quality, oversaw the integration project.

Delta used temporary contract workers employed by contract employment companies for the integration project. One of those contract employment companies was Defendant DGS, a wholly-owned subsidiary of Delta. Former Delta or Northwest employees who had been terminated "on an 'ineligible for rehire' or 'rehire no' status" could not work at Delta on the "safety-sensitive" parts integration project. Therefore, Delta performed background checks on temporary

3

contract workers assigned to the parts integration project to ensure that they did not have this status.

## C.    Woods's Employment with DGS

In December 2009, Woods applied to Defendant DGS to work on the parts integration project for six months.  On his application, Woods incorrectly responded "No" to a question asking whether he was ever suspended, dismissed, terminated, or asked to resign from a previous job.  Woods did not list his employment with Northwest on his application, which asked for only the last six years of employment history.  Woods also submitted a resume, which included his Northwest employment, but falsely stated that he had worked at Northwest for four years, from 1998 until 2002.  During his interview with Defendant DGS, Woods discussed his Northwest work experience without mentioning start or end dates.  Woods told the interviewer that "things did not work out the way they normally do" and that it was a "bad marriage" but did not say that he was "let go."

Defendant DGS hired Woods, who started work on December 29, 2009.  After several weeks of training in Minneapolis, Woods began working at Delta in Atlanta in mid-January 2010.  Woods's direct supervisor was Chan Stuart, who functioned as the project leader.

On February 23, 2010, Woods and Lee passed each other in the hallway, seeing each other for the first time since 1998.  Lee recognized Woods and knew

that Woods had been terminated from Northwest and had "ineligible for rehire" status.

Shortly thereafter, Defendant Lee went to Woods's supervisor, Stuart, who told Lee that Woods was having performance problems, including tardiness and improper use of the internet. Lee advised Stuart that Woods was terminated from Northwest and in "ineligible for rehire" status. From their conversation, Lee understood that Stuart would inform Defendant DGS of Woods's "ineligible for rehire" status and that Woods would be removed from the parts integration project. As Delta's Managing Director overseeing the integration project, Defendant Lee had the authority to direct Woods's removal from the project or to inform others that Woods was ineligible to work for Delta as a contract worker.

## D.    Woods's Termination from DGS

The next day, February 24, 2010, Stuart terminated Woods. According to Woods, Stuart seemed befuddled, did not know why he had to terminate Woods because Woods "had been doing a stand-up job," but said that he was directed by his supervisor to let Woods go.

The same day, Woods called Wendy Foree in human resources at Defendant DGS. Foree explained to Woods that he was terminated from the parts integration project because of his "ineligible for rehire" status and because his Northwest job was not on his DGS application. Foree told Woods that "since the merger had

5

happened, . . . the policies from both companies hadn't been trickled down to Delta Global yet" and there was no written policy in place that prevented DGS from hiring Woods.[1]

One week later, Woods sent Foree a letter asking Defendant DGS to reconsider his termination. Woods acknowledged that he had been "released from the Parts Integration Contractor position . . . due to the fact [he] was ineligible for rehire," but pointed out that he had "never worked for DGS before." Woods said he was not required to put his Northwest employment on his application because it was not recent employment, was listed in his resume, and he discussed it openly in his DGS interview. Woods suggested his termination "may[ ]be a personal vendetta an Interiors Director [Woods] used to work for at Northwest has with [him] that has lingered since 1998," and pointed out that this Director, meaning Defendant Lee, "does not even work for DGS."

## II. DISCUSSION

On appeal, Woods acknowledges that Defendants' reason given for terminating him was his "ineligible for rehire" status. Plaintiff Woods, however, argues that the district court erred in concluding that Woods failed to show the

---

[1]Two other contract workers, neither of whom was African American or had filed an EEOC charge, were also deemed ineligible to work on the parts integration project due to their "ineligible for rehire" status.

6

Defendants' reason was pretextual and in granting summary judgment on his § 1981 claim on that basis.[2]

## A.    McDonnell Douglas **Framework**

Section 1981 encompasses claims that an employer retaliated against an employee who previously complained about race discrimination.  See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 452-57, 128 S. Ct. 1951, 1958-61 (2008); see also Bryant v. Jones, 575 F.3d 1281, 1301 (11th Cir. 2009).  When the plaintiff relies upon circumstantial evidence, we evaluate the retaliation claim using the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).

Under this framework, the plaintiff must establish a prima facie case of retaliation, by showing that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) there was some causal relation between the two events.  Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212-13 (11th Cir. 2008).  Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for the

---

[2]We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

challenged employment action. Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994). If the defendant does so, the burden shifts back to the plaintiff to show that the proffered reason was in fact a pretext for retaliatory conduct. Brown, 597 F.3d at 1181-82.

In Woods's case, the district court concluded that Woods established a prima facie case of retaliation. The Defendants argue that Woods did not establish the third, causal connection prong of his prima facie case because his protected activity (filing an EEOC charge against Northwest) occurred in 1998 and his termination from Delta's parts integration project occurred twelve years later in 2010. The district court concluded that Woods had made such a showing under a "first opportunity to retaliate" theory of causal connection. We need not address this causal-connection issue because, for the reasons discussed below, the district court correctly concluded that Woods failed to show that the Defendants' proffered legitimate, nonretaliatory reason for terminating Woods was pretextual.

## B.    Defendants' Legitimate, Nonretaliatory Reason

The Defendants proffered a legitimate, nonretaliatory reason for terminating Woods from Delta's parts integration project. To carry their burden, the Defendants produced a declaration from Defendant Lee explaining that Woods was terminated because of his "ineligible for rehire" status. Specifically, Lee explained that Woods's immediate supervisor, Chan Stuart, terminated Woods because Lee

advised Stuart that Woods was terminated from Northwest and was ineligible for rehire.  Lee further explained that it was Delta's policy that contract workers on the parts integration project could not be former Northwest or Delta employees who had "ineligible for rehire" status and that Woods had that status.  In other words, as soon as it was discovered that, per Delta's policy, Woods could not work on the parts integration project, he was terminated.

For the first time on appeal, Woods argues that the statements in Defendant Lee's declaration about Woods's "ineligible for rehire" status are inadmissible because they were not based on personal knowledge, as required by Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 602.  We do not address this evidentiary issue because it was not raised before the district court and thus Woods failed to preserve this issue.  See Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga., 708 F.3d 1243, 1254 (11th Cir. 2013); Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

Woods alternatively argues that, absent corroboration, Lee's declaration cannot establish the Defendants' legitimate, nonretaliatory reason because Lee is "an interested witness."  Woods's argument misunderstands the employer's burden, and the district court's role, under McDonnell Douglas at the summary judgment stage.

The district court does not make credibility determinations in evaluating whether the employer has met its "exceedingly light" burden to proffer, but not prove, a legitimate, nonretaliatory reason for its employment action.  See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005) (explaining that the employer's burden is one of production, not persuasion, and "involves no credibility determination"); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 2748 (1993) ("[T]he determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment.  For the burden-of-production determination necessarily precedes the credibility-assessment stage.").  As this Court has explained, to accept a plaintiff's argument "that a district court can never credit an employer's witnesses for purposes of the second stage of the McDonnell Douglas analysis, then we'd be categorically barred from considering an employer's legitimate, non-discriminatory reason . . . ."  Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 n.14 (11th Cir. 2013).

The Defendants here met their intermediate burden through Lee's declaration.  We note, however, that Lee's declaration is not the only evidence that Woods was terminated from the parts integration project because of his "ineligible for rehire" status.  In his deposition, Woods testified that Wendy Foree told him

10

this was the reason he was terminated, and Woods's follow-up letter to Foree confirmed that this was the reason she had given him.

## C.    Pretext

To demonstrate pretext, a plaintiff must show that the defendants' proffered reason is false and that the true reason was retaliatory.  St. Mary's Honor Ctr., 509 U.S. at 515, 113 S. Ct. at 2752; Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).  In doing so, the plaintiff must meet the employer's reason "head on" and rebut it and cannot succeed simply by disputing the wisdom of the reason.  Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  To satisfy his burden, the plaintiff may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (quotation marks omitted).

Here, Woods did not present any evidence that the Defendants' proffered reason was false or pretextual.  For example, Woods did not produce any evidence: (1) that Lee told Stuart to terminate Woods for any other reason than the one given; (2) that Woods was actually eligible for rehire; or (3) that former employees who had "ineligible for rehire" status were permitted to work as temporary contractors on Delta's parts integration project.

11

To the extent Woods contends that Lee's status as an "interested witness" is sufficient to prove pretext, this argument also lacks merit.  We do not read Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51, 120 S Ct. 2097, 2110 (2000), to preclude summary judgment where the employer relies on the uncontradicted sworn statements of its decisionmaker employees.  As the district court noted, to do so would make it difficult for employers ever to prevail at summary judgment on a retaliation claim.  See Stratienko v. Cordis Corp., 429 F.3d 592, 598 (6th Cir. 2005) (pointing out that a rule barring an interested witness's testimony would "lead[ ] to absurd consequences because defendants will often be able to respond only through the testimony of their employees" (quotation marks omitted)); see also Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 856 (1st Cir. 2008); Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 271-72 (3d Cir. 2007).

Rather, under Rule 56, a party may support a motion for summary judgment with, among other things, affidavits or declarations, and there is no requirement that these sworn statements be from disinterested witnesses.  See Fed. R. Civ. P. 56(c)(1)(A), (c)(4); Fed. R. Evid. 601.  Once the moving party does so, the non-moving party bears the burden to produce evidence to dispute the facts averred in the sworn statement.  See Fed. R. Civ. P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); see also Chapman, 229 F.3d at

12

1024-25 (explaining, in the employment context, that if the employer meets its burden to articulate a legitimate, nondiscriminatory reason for the employment decision, the plaintiff must "come forward with evidence" showing that the reason given was not the real reason).  Here, Woods presented no evidence to dispute Lee's declaration stating that Woods was terminated from Delta's parts integration project because of his "ineligible for rehire" status.

Alternatively, Woods argues that Lee's declaration is contradicted by the fact that Defendant DGS hired him despite knowing he had previously worked for Northwest.  Woods, however, did not present any evidence that DGS knew when it hired Woods that he was terminated from Northwest and was ineligible for rehire, the key facts that led to Woods's termination.  To the contrary, on his DGS employment application, Woods stated that he had never been terminated from any position and his resume misstated the amount of time he worked for Northwest by several years.  Further, in his deposition, Woods admitted that, during his DGS interview, he did not tell the interviewer that he was terminated from Northwest.  Accordingly, DGS's hiring of Woods does not contradict Lee's declaration or suggest pretext.

Woods also argues that no one at Defendant Delta or Defendant DGS verified Lee's claim that Woods was ineligible for rehire before terminating him.  In fact, the record is silent as to whether Chan Stuart or Wendy Foree or anyone

else attempted to verify Lee's claim before dismissing Woods.  Even assuming no one verified Woods's status, that fact would be immaterial for several reasons.  First, Woods offered no evidence to suggest verification was needed.  Lee was Woods's second-level supervisor at Northwest, was involved with Woods's 1998 termination from Northwest, and knew of Woods's "ineligible for rehire" status.  Woods's argument amounts to a disagreement about the fairness of the termination process and does not give rise to an inference that the reason for his termination was false or pretext.  See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that the pretext inquiry is not concerned with whether the employer's decision was "prudent or fair," but instead with whether it was motivated by an unlawful animus).

Second, Lee's information was correct.  Woods was ineligible for rehire.  Woods' personnel record at Northwest documenting his 1998 termination for "misconduct – misuse of equipment," noted that he was "ineligible for rehire."  Any steps to verify Lee's information would only have confirmed that Woods was ineligible to work on Delta's parts integration project.

Finally, Woods points to Chan Stuart's "confused" reaction to Lee's directive to terminate Woods.  In his deposition, however, Woods explained that Stuart was befuddled because Woods was doing a good job.  Woods was not terminated because he was doing a poor job, but because it turned out that he

14

should never have been hired for the parts integration project in the first place. Stuart's confusion would not provide a basis for a jury to conclude that the proffered reason for terminating Woods was false, much less that the real reason was to retaliate for Woods's EEOC charge filed against Northwest in 1998.

For these reasons, the district court properly granted summary judgment to the Defendants on Woods's § 1981 retaliation claim.

**AFFIRMED.**