# United States Court of Appeals
## For the First Circuit

No. 15-1857

SHELLY A. RANDO,

Plaintiff, Appellant,

v.

MICHELLE LEONARD,

Defendant, Appellee,

CVS PHARMACY, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Robert D. Loventhal, on brief for appellant.
Laura M. Raisty and Locke Lord LLP, on brief for appellee.

June 17, 2016

**TORRUELLA**, **Circuit Judge**.  From 2010 to 2012, more than 100 bottles of the pain medication butalbital went missing from a CVS Pharmacy in Concord, Massachusetts.  After a CVS surveillance video showed plaintiff-appellant Shelly Rando, a pharmacy technician, pocketing a bottle of butalbital, Rando was suspected of committing the thefts.  Defendant-appellee Michelle Leonard, a loss prevention manager at CVS, conducted an interview with Rando in which Rando confessed to stealing all of the missing bottles, and Rando was subsequently terminated.  In this suit, Rando denies that she stole the bottles and asserts that Leonard is liable for the tort of intentional interference with contractual relations for forcing her to confess.  The United States District Court for the District of Massachusetts entered summary judgment in favor of Leonard.  We affirm.

**I.**

**A.  Factual History**

Since 2002, Leonard has served as a Regional Loss Prevention Manager at CVS Pharmacy, Inc. ("CVS").[1]  As a Loss Prevention Manager, Leonard investigates "shrinkage," the loss of inventory due to factors such as theft and vendor fraud.  In February of 2011, Leonard learned of significant "growth" in

---

[1]  CVS Pharmacy was incorrectly named as CVS Caremark in the complaint.

butalbital at the CVS in Concord.[2]  Growth occurs where a pharmacy "order[s] a drug in quantities that significantly exceed those that are being dispensed to patients."  At that time, the CVS should have had 73 bottles, each containing 100 tablets of butalbital, in inventory.  A review of the inventory yielded only 205 tablets of butalbital:  7095 tablets, or slightly fewer than 71 bottles, were missing.  The losses soon stopped, however, and Leonard concluded that an employee who had recently left the company must have been responsible for their disappearance.  In April of 2012, Leonard learned that the same CVS in Concord was again experiencing growth in butalbital, with 67 bottles, or 6700 tablets, missing.  All in all, a total of 138 bottles of butalbital had disappeared since 2010.  Around this time, Leonard also learned that the CVS had growth in hydrocodone.

Rando had served as a pharmacy technician at various CVS stores since 1994 and was then employed at the CVS in Concord.  On April 21, 2012, an in-store surveillance camera captured Rando taking a bottle of butalbital off the shelf and placing it in her pocket.  Rando took the bottle home that day.  After watching the video, either store manager Steve Normandy or pharmacy manager

---

[2]  The prescription drug at issue in this litigation is in fact a combination of butalbital, acetaminophen, and caffeine.  We refer to the drug as "butalbital" throughout this opinion.

-3-

Colleen Robillard told Leonard about the tape and informed her that a bottle of butalbital was missing. Leonard watched the tape as well.[3]

Two days later, on April 23, Leonard interviewed Rando with another loss prevention manager, Alfie Binns. Early in the interview, Rando acknowledged having taken the single bottle of butalbital on April 21. Leonard then broached the issue of whether Rando had also stolen the hydrocodone and the other 138 bottles of butalbital. Rando felt coerced and pressured during the meeting and recalled that Leonard barraged her with questions. Leonard repeatedly placed a confession in front of Rando for her to sign, asked whether Rando knew that she was going to be terminated, yelled at Rando, and threatened to call the police.[4] Rando also felt nervous as she did not know who Binns was or why he was there. Desperate to leave and exhausted by Leonard's constant questions, Rando finally signed the confession and a promissory note stating that she had stolen the 138 bottles of butalbital (but not any

_____

[3] Rando denies that Leonard recognized her in the tape on the basis that, in her deposition, Leonard stated that she did not recall whether she could see Rando's face or what Rando did with the bottle in the video.

[4] It is difficult to discern, based on Rando's testimony, whether Leonard threatened to call the police before or after Rando confessed to stealing the remaining bottles of butalbital. For purposes of summary judgment, we will assume that Leonard made this threat before Rando's confession.

hydrocodone) and owed CVS $7,482.99.  During her deposition, Rando stated that she "would have admitted to stealing the crown jewels to get out of that room."

Once Rando signed the confession, Leonard called the police and they arrived soon after.  Rando agreed to let them search her home.  During the search, the police found the bottle of butalbital that Rando had stolen two days before, along with two empty bottles from a "long, long time ago."  Rando has not had a prescription for butalbital for more than ten years.

In early May, Normandy called Rando to terminate her employment.  Normandy did not explain why Rando was being terminated, nor did Rando ask for an explanation.  Rando was charged with one count of larceny over $250 in the Concord District Court.  After CVS failed to give any further evidence to the assistant district attorney ("ADA") in charge of the case, Rando was accepted into a pretrial diversion program.  Rando took drug tests over a six-month period as part of the program, and the case was dismissed.  The ADA later informed Rando's counsel that another individual had confessed to stealing the hydrocodone.

B.  **Procedural History**

In May of 2013, Rando filed suit against Leonard and CVS in the United States District Court for the District of Massachusetts on the basis of diversity jurisdiction.  Her amended

-5-

complaint alleged counts of malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with contractual relations, and abuse of process.

The defendants moved to dismiss Rando's claims under Federal Rules of Procedure 12(b)(1) and 12(b)(6). The district court dismissed all of Rando's claims except her count for intentional interference with contractual relations, which was only alleged against Leonard.[5] After discovery, Leonard filed a motion for summary judgment, which the district court granted in a written order. Rando now appeals that determination.

**II.**

**A. Standard of Review**

"We review an order for summary judgment de novo, evaluating the facts and all reasonable inferences therefrom in the light most flattering to the nonmoving party." <u>Nieves-Romero</u> v. <u>United States</u>, 715 F.3d 375, 378 (1st Cir. 2013). Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if the evidence of record permits a rational factfinder to resolve it in

---

[5] Accordingly, none of Rando's claims against CVS remain in this case.

-6-

favor of either party," and "'material' if its existence or nonexistence has the potential to change the outcome of the suit." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010).

## B. Analysis

For the tort of intentional interference with contractual relations,

> a plaintiff must prove that (1) he had an advantageous relationship with a third party . . . ; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.

Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007). Although Leonard concedes that Rando can satisfy the first element of the four-part test through her employment relationship with CVS, she asserts that Rando cannot make the other three showings. Because Rando fails to satisfy the third prong of the test -- that Leonard's alleged inducement was improper -- we need not reach Leonard's other arguments.

In assessing whether a defendant acted with improper motive or means, Massachusetts courts apply a heightened standard where defendants are "'corporate officials' acting 'within the scope of their employment responsibilities.'" Id. at 13 (quoting Gram v. Liberty Mut. Ins. Co., 429 N.E.2d 21, 24 (Mass. 1981)).

-7-

In such instances, the plaintiff must carry the heavy burden of showing that the defendant acted with "actual malice," or, with "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Id. (quoting Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1246 (Mass. 1992)).

In her motion for summary judgment before the district court and again on appeal, Leonard argued that she was a "corporate official" and the actual malice standard was therefore appropriate. By doing so, she fulfilled her threshold duty of "bringing to the attention of the plaintiff and the court in some fashion that [s]he claims to qualify as a 'corporate official' of the relevant corporation and therefore is entitled to have the actual malice standard apply." Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 364 (Mass. 2014). Once Leonard asserted that she qualified as a corporate official, Rando "[bore] the burden of proving either that the defendant does not so qualify and is not entitled to the actual malice standard, or that the defendant did act with actual malice." Id. Rando does not carry this burden, as she has waived any argument that Leonard does not qualify as a "corporate official" and fails to produce evidence that Leonard acted with actual malice.

In her opposition before the district court, Rando stated, in a single sentence, that she did not believe

Massachusetts case law supported Leonard's argument that she qualified as a corporate official and that Rando did "not waive the right to argue that a showing of malice is not required." On appeal, Rando's briefing on this issue is limited to a footnote in which she reiterates that she "does not waive the right to argue that a showing of malice is not required" and asserts, without developed argument, that "[c]orporate officials' status is reserved for owners and controlling officials of a company." Despite Rando's assertions to the contrary, these perfunctory arguments are insufficient to preserve her argument on appeal. See Armistead v. C & M Transp., Inc., 49 F.3d 43, 45 n.2 (1st Cir. 1995) (deeming waived an "argument [that] was not fully developed below"); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").[6]

---

[6] Even if it were not waived, Rando's argument that the "corporate officials" analysis is reserved for more senior employees such as owners and shareholders is without merit. The term "corporate official" has been used "expansively" to include "high level corporate officers, as well as directors involved in management." Blackstone, 860 N.E.2d at 17; see also Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2001) (explaining that the actual malice analysis applies to "defendant-supervisors"); Boothby v. Texon, Inc., 608 N.E.2d 1028, 1040 (Mass. 1993) (same). Leonard need not have "day-to-day involvement" in the enterprise so long as her activities are "directed toward corporate purposes." Blackstone, 860 N.E.2d at 17 (quoting Gram, 429 N.E.2d at 24). Although she was not Rando's direct supervisor, Leonard acted in a managerial position and her actions here served the corporate purpose of "protection of company assets and reduction of

-9-

Although Rando's arguments regarding whether Leonard acted with actual malice are properly preserved, we find that Rando produces no evidence suggesting that Leonard acted with actual malice and without a legitimate corporate purpose. See Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2001) ("Proof of actual malice requires more than a showing of mere hostility."). Rando asserts that Leonard knowingly elicited a false confession from Rando because Leonard "was looking for someone to pin the blame on" after failing to find the cause of the continued butalbital and hydrocodone losses. Rando's only evidence on this point is that Leonard spoke to her boss, Christopher Crossman, about the thefts before interviewing Rando. But the mere fact that Leonard discussed an assignment with her boss does not suggest that she was frustrated or looking for someone to blame, as Rando argues. Rando also asserts that Leonard accused Rando "without any evidence establishing that theft." To the contrary, Leonard had reason to believe that Rando may have been the culprit: Rando worked at the Concord CVS when the thefts began, and she was caught on videotape stealing a bottle of butalbital. To be sure, Rando's theft of one bottle of butalbital

---

shrinkage." Applying the "actual malice" standard here thus serves the policy of protecting those involved "in matters related to the conduct of the internal affairs of a corporation." Id. at 16 n.15.

does not necessarily mean she was responsible for the other thefts. Nevertheless, there is no indication that Leonard, by investigating Rando's potential involvement in the overarching growth problem, acted with spite or malice.[7] Rando claims that Leonard lied to her, but the record evidence does not support this assertion. Nor does Rando produce any evidence that Leonard harbored any ill will toward Rando. Indeed, their prior interactions, which were limited to polite greetings, were uneventful. At worst, Rando's testimony suggests that Leonard aggressively questioned Rando, informed Rando that she faced termination, threatened to call the police, and yelled at her. We do not doubt that Rando felt frightened and upset by this encounter. Leonard's behavior, however, simply does not rise to the level of "actual malice." See Weber v. Cmty. Teamwork, Inc., 752 N.E.2d 700, 716 (Mass. 2001) ("[E]vidence that a corporate official engaged in 'sloppy and unfair business practices' is an insufficient basis to negate the official's broad privilege to terminate an at-will employee." (quoting Gram, 429 N.E.2d at 25)); King v. Driscoll, 638 N.E.2d 488, 495 (Mass. 1994) ("[P]ersonal dislike will not warrant an inference of the requisite ill will.").

---

[7] Moreover, the evidence shows that during the interview Leonard asked Rando only one question about the hydrocodone. Once Rando denied stealing the hydrocodone, Leonard did not ask any further questions on that topic.

Recall, Leonard's job was to determine the source of the butalbital and hydrocodone losses: even if she did so in a hostile manner, that evidence cannot support a claim for intentional interference with contractual relations.

## III.

Because the record is devoid of any evidence that Leonard acted with actual malice, the motion for summary judgment is affirmed.

**<u>Affirmed</u>.**