# United States Court of Appeals

## For the First Circuit

No. 17-1014

LEONAL ANTHONY GARCIA-GARCIA; KARELIS ECHEVARRÍA-CRUZ; CONJUGAL
PARTNERSHIP GARCIA-ECHEVARRÍA,

Plaintiffs, Appellants,

v.

COSTCO WHOLESALE CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. Magistrate Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Jose G. Fagot Diaz and Manuel E. Lopez-Fernandez on brief for
appellants.
Vincente J. Antonetti, Javier G. Vázquez-Segarra, and Goldman
Antonetti & Córdova, LLC, on brief for appellee.

December 22, 2017

THOMPSON, **Circuit Judge**.  After approximately eleven years of working his way up the Costco[1] employment ladder, appellant Leonal Anthony Garcia-Garcia[2] (Garcia) was fired following an investigation which revealed an inventory discrepancy in the Meat Department that he managed.  Garcia sued Costco in federal court invoking diversity jurisdiction and alleging an array of Puerto-Rico-based claims stemming from his discharge.[3] The district court granted summary judgment in favor of Costco on all counts and Garcia appealed to this Court.  We briefly summarize Garcia's employment history before we delve into the inventory snafu which ultimately led to his dismissal.  In doing so, we view the evidence in the light most favorable to Garcia and draw all reasonable inferences in his favor.  See Del Valle-Santana v. Servicios Legales De Puerto Rico, Inc., 804 F.3d 127, 128 (1st Cir. 2015).

## BACKGROUND

In 2002, Garcia began working at Costco store #365 located in Caguas, Puerto Rico, as a meat wrapper in the store's

---

[1] Cover bears defendant's full corporate name.

[2] Garcia's wife, Karelis Echevarría-Cruz, and their conjugal partnership are also named plaintiffs and their claims are derivative.  See Medina-Rivera v. MVM, Inc., 713 F.3d 132, 134 (1st Cir. 2013).

[3] The claims against co-defendant National Union Fire Insurance Company of Pittsburgh, Costco's liability insurer, were dismissed per joint motion.

Meat Department. Throughout his tenure at Costco, Garcia continuously received positive performance evaluations and promotions. In 2006, he was elevated to meat cutter, and then in 2011, to meat manager. As part of his responsibilities as manager, Garcia was tasked with conducting inventory of all goods within the Meat Department. Although meat inventory was not Garcia's sole responsibility, it was nevertheless his "primary" one.

Fast forward to October 28, 2013. Steve Stoddard, a Regional Meat Manager at Costco, noticed, while reviewing the Costco meat inventory, that "the ending inventory of $297,000 represented a meat inventory much higher than the actual inventory [Costco] store #365 [could] physically accommodate in the store at any given time."[4] Thereafter, David Soto, then Costco-store-#365's manager, along with his assistant manager, Rocío Mendez, and Garcia were tasked with conducting a full accounting of the Meat Department's stock. What they found was an ending inventory of $315,000. Given this high ending tally, a manual count of the meat cases was performed, which resulted in a discrepancy of $114,000 in missing product.

Following up, on November 4, 2013, Nayreth Ríos, Internal Auditor at Costco store #365, along with Rocío Mendez and Garcia, performed a second manual inventory count, which resulted

---

[4] All dollar amounts included in this decision are approximate figures rounded to the nearest thousand.

in an ending value of $178,000.  When handed the result, Stoddard compared the audited manual inventory count with the ending inventory of the previous period and concluded that "the inventory discrepancy was due to a hidden shrink[5] of approximately $146,000." A broader review of the inventory entries revealed that, on the 27th, 28th and 29th of October 2013, manual entries of approximately $114,000 in product were made into the system (known as AS400).  At that time, "it was determined that . . . Costco's inventory of the Meat Department for store #365 had been erratic for over nine . . . monthly periods."

Thomas Farano, a Loss Prevention/Regional Manager at Costco, conducted interviews to get to the bottom of the product discrepancy.  While speaking with Garcia, Farano, along with Jose Mendez, Costco's Loss Prevention Manager, and Frank Chiriboga, Costco's Regional Meat Manager, accused Garcia of stealing and altering the inventory numbers "to cover up the theft."[6]  According to Farano,

> [Garcia] denied any knowledge or involvement in entering the additional inventory into the AS400.  [Garcia] indicated that other people had his pass word [sic] and he did not make any fraudulent entries to increase his inventory levels.  He also could not offer any

---

[5] Shrinkage is the reduction in or loss of inventory due to factors such as theft, vendor fraud, breakage, or waste.  See Shrinkage, Black's Law Dictionary (10th ed. 2014); Rando v. Leonard, 826 F.3d 553, 554 (1st Cir. 2016).

[6] Nayreth Rios, Inventory Auditor, was also separately interviewed.

explanations to what could have happened which would have impacted the inventory numbers.

Jeremy Dempsey, Vice President of Operations at Costco, also interviewed Garcia and accused him of "manipulating inventory and stealing products." When grilled, Garcia once again was "unable to explain why his inventories were high and erratic over the past nine . . . periods." Garcia reiterated that he had not stolen any merchandise and that, in fact, he believed all the merchandise had been accounted for. On three occasions, Garcia also grieved to Dempsey, Soto, and Farano about the accusations being made against him and complained about (what he characterized as) Costco's "gender-based disparate treatment," which he said was causing him emotional distress and anxiety. According to Garcia, Costco had treated similarly situated female employees, including Beatriz Gomez, Rocío Mendez, and Johanne Oquendo, differently than him; when they engaged in similar alleged conduct (i.e., stealing or allowing theft under their watch), they were not disciplined and were actually later promoted.

Seven days later, on November 29, 2013, Costco gave Garcia the boot. According to Garcia, Soto delivered the discharge news, and while doing so, apologized to Garcia and admitted Costco had no evidence that "pointed to Garcia as having committed any wrongdoing." Approximately two months later, Garcia sent a letter to Joe Portera, Costco's Executive Vice President, asking Costco

to reconsider its decision to terminate his employment.  In the letter, Garcia pointed out that other younger employees, "both male and female," who had been involved in "similar situations" had been allowed to continue working at Costco.  He professed, once again, that he did not steal from Costco and urged Portera to reconsider his termination.  Garcia's request was denied and his employment was never reinstated.

The following year, Garcia, represented by counsel, sued Costco in federal court pursuant to 28 U.S.C. § 1332 alleging multiple violations of Puerto Rico law: (1) gender-based disparate treatment and retaliation, Law 100, P.R. Laws Ann. tit. 29 § 146; (2) sex discrimination and retaliation, Law 69, P.R. Laws Ann. tit. 29 § 1321; (3) libel and defamation, P.R. Laws Ann. tit. 32 §§ 3141-3149; (4) violation of Sections 1, 8, and 16 of Article II of the Puerto Rico Constitution; (5) wrongful discharge, Law 80, P.R. Laws Ann. tit. 29 § 185b; and (6) violation of Puerto Rico's Civil Code, Art. 1802.  His complaint sought compensatory damages and reinstatement.  Costco filed an answer to the suit denying all wrongdoings alleged in the complaint and retorting that Garcia was dismissed "with just cause . . . after the investigation regarding the inventory discrepancy showed that he was responsible for the grossly negligent mishandling of company records and serious misconduct and incompetence in the performance of his job."

Following discovery, Costco filed a motion for summary judgment maintaining that the "present case poses no genuine issues of material fact and as a matter of law the instant [c]omplaint should be dismissed."  In support of its motion, Costco filed three affidavits from Costco agents Stoddard, Farano, and Dempsey. Garcia objected to the motion on several grounds, including that Costco had failed to meet its burden of establishing that his termination was based on good cause.[7]  Garcia also objected to the admission of the three affidavits asserting they were not notarized and, according to Garcia, "all fail to represent[,] . . . assert[,] and/or mention in the specific document that each declarant has personal knowledge of the facts they pretend to assert." Additionally, Garcia claimed, without any discussion, that "the documents attached as exhibits to the [affidavits] are not authentic" and should not be admitted.  The judge disagreed and admitted the affidavits[8] after concluding that Stoddard "declared

---

[7] He also argued that: (1) a jury could infer he had shown pretext (relating to his gender discrimination claim); (2) he demonstrated a strong causal connection between his protected conduct and his termination (relating to his retaliation claim); (3) Costco lost its conditional privilege to communicate matters regarding the workplace (relating to his defamation claim); and (4) his constitutional claim should still stand even if his defamation claim failed.

[8] It is unclear whether the judge ruled on the admission of the Farano and Dempsey affidavits.  Because there is nothing to suggest these affidavits were excluded and Garcia treats them as having been admitted, we will do the same for purposes of this appeal.

events based on his personal knowledge." She also declined to entertain Garcia's "boiler-plate objection" that the exhibits had not been properly authenticated. As to the merits of Garcia's wrongful discharge claim, the district court found the following facts to be undisputed and thus dispositive: (1) Garcia was in charge of keeping inventory of the Meat Department; (2) Costco conducted an extensive investigation into the inventory discrepancy; and (3) Garcia was unable to account for such a discrepancy. The district court also found no merit to Garcia's remaining claims and granted summary judgment on all counts.[9] Garcia appealed to this Court.

**STANDARD OF REVIEW**

"We review the entry of summary judgment de novo." Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 126 (1st Cir. 2017). A grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015). "A genuine issue of fact exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009) (quoting Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir.

_____

[9] We will discuss the lower court decision in greater detail as it becomes pertinent to our analysis.

- 8 -

2009)). The court must examine "the record in the light most favorable to the nonmovant" and must make "all reasonable inferences in that party's favor." Ameen, 777 F.3d at 68 (quoting Barclays Bank PLC v. Poynter, 710 F.3d 16, 19 (1st Cir. 2013)). "While we resolve all reasonable inferences in favor of the non-moving party, we 'must ignore conclusory allegations, improbable inferences, and unsupported speculation.'" Taylor, 576 F.3d at 24 (quoting Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008)).

Moreover, when the district court's ruling is dependent in part on preliminary evidentiary rulings, we "review the district court's evidentiary rulings made as part of its decision on summary judgment for abuse of discretion." Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 13 (1st Cir. 2006) (citing Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 31 (1st Cir. 2004)).

## DISCUSSION

On appeal, Garcia raises with us the same arguments he made below regarding the admission of the affidavits and the exhibits attached thereto--that neither should have been considered because they were not in compliance with Rule 56(c)(4) of the Federal Rules of Civil Procedure. Additionally, Garcia continues to challenge the judge's summary-judgment ruling on the

merits of each of his six claims against Costco.  We begin with a discussion of the affidavits before examining whether each count of Garcia's complaint warranted summary disposition.[10]

## A. Admission of Affidavits

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  "[T]he requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise."  Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001).

Before this Court, Garcia once again maintains that Costco's supporting affidavits were not in compliance with Rule 56 for two reasons: (1) because the affiants did not declare that they have personal knowledge regarding the matters stated therein; and (2) because the inventory exhibits attached to the affidavits were not authenticated by the affiants.  We are not persuaded the judge abused her discretion.

---

[10] We pause to note that although every heading (including the table of contents) of Costco's brief states that the district court erred in entering summary judgment, the body of the brief prays we affirm that entry.

- 10 -

## 1. Affidavits

Garcia maintains the judge erred by not striking the affidavits of Stoddard, Farano, and Dempsey from the record. According to Garcia: the three affidavits "reveal[] that the affiants did not declare that they have personal knowledge of the purported facts set forth in each of their declarations" and, "[f]or such reason and because the affiants did not declare how they would be competent to testify on those matters raised in the [affidavits] at trial, the [district court] erred in not striking these from the record as they are inadmissible in evidence."[11] (Emphasis in the original). Notably, although Garcia summarily and generally asserts that the affiants lacked personal knowledge about the matters being sworn to, the argument he actually develops on appeal is much more narrow and technical--he argues that the affiants' mere failure to specifically declare within the affidavits themselves that they did have personal knowledge suffices to make the affidavits inadmissible.

---

[11] In his brief, Garcia quotes cases explaining the previous Federal Rule of Civil Procedure 56(e), which required the records submitted with affidavits to be certified (although he makes no argument relating to certification). This rule was amended in 2010; while no change was made to the summary-judgment standard itself, or to the burdens imposed on movants and opponents, "authentication" is no longer required under the rule. Rule 56. Summary Judgment, 10A Fed. Prac. & Proc. Civ. CIV Rule 56 (4th ed.)

First we note that Rule 56 contains no requirement that the affiant specifically articulate that he or she has personal knowledge. See Fed. R. Civ. P. 56(c). Therefore, Garcia's focus on this narrow argument, which is unsupported by the plain language of the applicable rule, is quite odd. Further, a reading of the affidavits demonstrates that all three affiants did have personal knowledge about the facts they were swearing to, despite not explicitly stating so. See Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (internal citation omitted) ("That Rule 56[]'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves."). For instance, Stoddard specifically states in his affidavit that he was the Costco agent who noticed the high inventory number of approximately $297,000 for store #365 and later "determined that the inventory discrepancy was due to a hidden shrink of approximately $146,000[.]" Similarly, Farano attested that he had been instructed to investigate the inventory discrepancy, and as part of doing so, interviewed Garcia, along with Mendez and Chiriboga. Farano also attached two emails as exhibits to his affidavit whereby he provides a synopsis of the interviews he conducted as part of the investigation. Finally, Dempsey notes that Stoddard informed him of the high-ending inventory, and that on November 13, 2013, he too "interviewed Garcia regarding the inventory discrepancy." It is readily

apparent, and easily inferred, that these statements were made with personal knowledge.

But, to the extent the affiants make broader statements about the inventory investigation without making their knowledge readily clear, those statements are either undisputed or are not specifically challenged by Garcia. Again, we note he does not contest the accuracy or veracity of any specific statement within the affidavits.

Accordingly, we find no abuse of discretion in the lower court's decision to admit the affidavits. See Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 445 n.1 (1st Cir. 2009) (no abuse of discretion in admitting employer affidavit to show what motivated employee's firing because "the relevant question in th[at] case [was] not whether [the employer] was correct that [the employee] had violated rules, but whether that perceived violation was the reason it fired him").

## 2. Exhibits

As to the exhibits attached to the affidavits, Garcia maintains that they were not authenticated by the affiants or certified under oath and therefore, should have been excluded. We disagree. As noted, the district court never reached the merits of this contention because Garcia's argument was merely boilerplate--it characterized the exhibits as lacking authentication without noting any specifics. While Garcia

attempts to resurrect this argument on appeal by adding in a bit more bite (he gets more specific and argues the exhibits are "illegible and unsigned"), his attempt is futile.  See McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.") Importantly, Garcia does not challenge the district court's finding that his argument regarding the exhibits was mere boilerplate.  Accordingly, "[w]e reject, as procedurally defaulted," Garcia's arguments relating to the authenticity of the exhibits.  See id.

Seeing no abuse of discretion, we proceed first to address Garcia's wrongful discharge challenge and then take up his gender-based discrimination and defamation claims.

## B. Wrongful Discharge (Law 80)

Garcia's wrongful discharge claim is based on a Puerto Rico statute, colloquially known as "Law 80," which provides a remedy to employees who are discharged "without just cause."  P.R. Laws Ann. tit. 29, § 185a; see also Echevarría, 856 F.3d at 140. Law 80 provides that "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause."  Id. § 185b(f).  On the other hand, the

statute specifies that the following constitute examples of good-cause discharge:

- "the worker indulges in a pattern of improper or disorderly conduct[;]" Id. § 185b(a).

- the employee's failure to perform his or her work "in an efficient manner, or . . . doing it belatedly and negligently or in violation of" quality standards; Id. § 185b(b).

- "repeated violations of the reasonable rules and regulations established" by the employer, if a written copy has been duly furnished to the employee. Id. § 185b(c).[12]

The following burden-shifting framework is applicable to Law 80 claims: "(1) the employee must [first] show that he or she has been discharged and allege that the dismissal was not justified; (2) the burden then shifts to the employer to show, by a preponderance of the evidence, that the dismissal was justified; and (3) if the employer shoulders that burden, the employee must rebut the showing of good cause." Echevarría, 856 F.3d at 140.

In the present case, our de novo review demonstrates that Garcia easily overcomes the first hurdle--it is undisputed

---

[12] The statute also specifies three other good-cause grounds for termination "that relate to company restructuring or downsizing." Carrasquillo-Ortiz v. Am. Airlines, Inc., 812 F.3d 195, 196 (1st Cir. 2016); see also P.R. Laws Ann. tit. 29, § 185b(d)-(f).

that he was discharged from his employment with Costco and he alleges in his complaint that such discharge was not justified.

The burden now shifts to Costco to show by a preponderance of the evidence that Garcia's discharge was based on good cause. See id. To meet the good-cause prong, Costco "need only demonstrate that it had a reasonable basis to believe that [Garcia] has engaged in one of those actions that the law identified as establishing such cause." Id. (quoting Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015)). In fact, even a "perceived violation [would] suffice[] to establish that [the employer] did not terminate [the employee] on a whim, but rather for a sensible business-related reason." Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 10 (1st Cir. 2007) (emphasis added). The termination need only be "non-arbitrary" and bear "some relationship to the business' operation." Pérez, 804 F.3d at 9.

Costco cites Garcia's inability to account for the $146,000 in missing meat product as the cause of his termination. As noted, Garcia, as meat manager, had inventory oversight of the Meat Department. He himself admitted at his deposition that ensuring that the reported inventory figures comported with the physical inventory in the Meat Department was his "primary responsibility"; despite this, under his supervision, the meat inventory was inflated for a total of nine monthly periods. When Costco agents inquired about the discrepancy, Garcia was unable to

- 16 -

explain or justify the numbers. At best, the record shows that Garcia wasn't satisfactorily performing his primary job responsibility. Given this backdrop, we believe the evidence presented by Costco would compel a reasonable jury to conclude that Costco has met its good-cause burden and that its decision to dismiss Garcia was not made on a whim.[13] See Hoyos, 488 F.3d at 10. Therefore, Costco has shouldered its burden of proving by a preponderance of the evidence that Garcia's employment was terminated for good cause. See Pérez, 804 F.3d at 10 ("Although [employee] has shown that he was discharged, a reasonable jury could only conclude that [employer] ha[d] met its burden of showing just cause.")

"Because [Costco] established cause for [Garcia's] termination, to withstand summary judgment [Garcia] bore the burden to rebut that showing." Id. To satisfy his burden, Garcia was required to do more than "cast[] doubt" on Costco's proffered reason for his discharge; instead, Garcia had to "adduce probative evidence that [Costco] did not genuinely believe in or did not in fact terminate [Garcia] for the reason given." Id. at 11 (citing Dea v. Look, 810 F.2d 12, 15 (1st Cir. 1987)).

---

[13] The district court ended its analysis here, but Law 80 framework requires us to consider whether Garcia has presented any evidence to rebut Costco's good-cause showing. See Echevarría, 856 F.3d at 140.

- 17 -

The following three themes can be distilled from Garcia's brief (with a lot of effort on our part) as addressing why he believes he has rebutted Costco's good-cause showing: (1) he had an excellent employment record at Costco; (2) no inventory discrepancy actually existed; and (3) even if one did exist, Costco failed to prove he was the one responsible.[14] We address and reject each of these arguments in turn.

### 1. Employment History

Garcia maintains that as to his "purported job incompetence and just cause for dismissal," he presented evidence that he had a great employment history with Costco, highlighting that "during the same year of his termination, (2013) he was favorably evaluated and received a salary increase." He also cites to his history of frequent promotions, high ratings on quality inspections, and high monthly average sales to rebut Costco's good-cause showing.

While evidence of overall positive employment reviews may be used to establish pretext when an employee is later

_____

[14] Garcia's brief does not clearly present these arguments within prong 3 of the Law 80 burden-shifting framework (where he is tasked with rebutting Costco's proffered reason for discharging him). Instead, he conflates prongs 2 and 3--sometimes arguing Costco has not met its burden (implying prong 2), while at other times arguing that the proffered reason given by Costco for his dismissal was pretextual (implying prong 3). Because Garcia's arguments all appear to challenge Costco's proffered reason, we think they best address the third prong. We note that his arguments fail irrespective of what prong we tie them to.

terminated for poor performance, see Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140-43 (1st Cir. 2012), Costco has never suggested that it was anything but pleased with Garcia's work performance before his elevation to Meat Department manager. Indeed, in 2010 Costco had named Garcia employee of the month. However, Costco need not establish a continuous pattern of poor behavior to satisfy the good-cause prong; instead, one instance can suffice. See Hoyos, 488 F.3d at 6 ("Although Law 80 generally refers to multiple episodes of misconduct as constituting good cause, 'Law 80 does not invariably require repeated violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await further occurrences.'") (quoting Gonzalez v. El Dia, Inc., 304 F.3d 63, 75 (1st Cir. 2002)). Undeniably, Costco's proffered reason--a costly and unexplained $146,000 inventory discrepancy within the department Garcia managed--is so severe that Costco could not have been "expected to await further occurrences." See id. Therefore, Garcia's first attempt to rebut Costco's good-cause showing fails.[15]

---

[15] To the extent Garcia argues there are "genuine issues over material facts" regarding his stellar employment record, these facts are by no means material to this case. Whether Garcia had a great (or a terrible) employment history with Costco prior to the inventory discrepancy does not really matter because Costco relies on the inventory discrepancy (and nothing else) to satisfy its good-cause prong.

## 2. Existence of Inventory Discrepancy

Next, Garcia argues that there was no actual inventory discrepancy as all the products that Costco agents claimed were missing were, in fact, "physically there and part of the inventory." According to Garcia, when he specifically asked to see the list of "missing items," Costco was unable to provide him with one.[16] Garcia maintains that the apparent inventory discrepancy could easily be explained: Costco agents compared a partial inventory (of just beef and pork resulting in a low $160,000 figure)[17] with the inventory reported for the entire meat department. In other words, there appeared to be a discrepancy because they did not compare the same products.

Garcia's attempt to undermine Costco's evidence of hidden shrinkage fails. Stoddard's affidavit, including the inventories and emails attached thereto, show that the "partial inventory" of pork and beef Garcia refers to was in fact compared to a manual inventory conducted <u>for the same meat items</u>. Here's what the record shows: Stoddard was surprised by the reported inventory of $297,000 and requested that Soto perform another

---

[16] Garcia does not point to anything in the record indicating he requested this information during discovery.

[17] Although Garcia notes a $160,000 amount for the pork and beef inventory, the record suggests this figure was actually $118,000. Regardless, the exact amount is not material to the issues on appeal.

inventory; after the results were still high ($315,000), Stoddard requested a manual recount of the entire Meat Department ($178,000) and, specifically, the results for "pork and meat."[18] Stoddard then compared the results of the manual recount sent by Soto to reported inventories for seven specific "pork and meat" items. The $114,000 discrepancy found was the result of a comparison between what was reported and what was physically present for these seven meat items.[19] Thus, Garcia's argument that the apparent discrepancy is based on an inherently flawed analysis is not supported by the record.

### 3. Other Employees

Lastly, Garcia faults Costco for failing to meet "its burden of demonstrating without any doubt" that he is the person who actually engaged in the alleged theft and/or inventory manipulation. Other employees, including managers and auditors, had his password, says Garcia, and could have accessed and entered false inventory figures into AS400. Once again, we are not persuaded.

---

[18] Because "meat" would include the entire department, it is likely that he meant "pork and beef."

[19] The hidden shrink later rose to $146,000 when the entire physical meat inventory of $178,000 was compared to the reported ending inventory for the previous period of $297,000. A worksheet attached to Stoddard's affidavit includes the calculations made to reach the amount of $146,000 in hidden shrink.

For starters, Garcia clearly has the standard wrong; Costco need not "demonstrate[] without any doubt" that Garcia manipulated the numbers. Instead, it must show by a preponderance of the evidence that it had good cause to terminate Garcia. See P.R. Laws Ann. tit. 29, § 185b. As noted, even a "perceived violation" is sufficient to rebut an allegation that the decision to dismiss an employee was made on a whim. See Hoyos, 488 F.3d at 10. Here, Garcia as manager was primarily responsible for the meat tabulation; whether or not he was the one guilty of any theft or of manipulating the inventory numbers is immaterial. Being terminated from his post for failing to adequately perform his primary responsibility of ensuring that the accounting was accurate bore a direct "relationship to the business' operation." See Pérez, 804 F.3d at 9. Therefore, Garcia has failed (once again) to rebut Costco's good-cause showing.

Accordingly, because a reasonable jury would be compelled to find that Costco has met its burden of proving just cause and that Garcia has failed to rebut such showing, the district court correctly granted summary judgment on the Law 80 claim.[20] Id. at 8.

---

[20] Garcia also argues that Costco's alleged violation of its own internal accounting procedures by not having a member of the warehouse management staff sign the inventory (and then later using that inventory to establish that Garcia's discharge was justified) demonstrates that the reasons given for his termination were pretextual. We fail to see any plausible link between an inventory

- 22 -

## C. Gender Discrimination (Law 100 and Law 69)

In addition to his wrongful discharge claim, Garcia alleges that he was discriminated against in violation of Law 100, P.R. Laws Ann. tit. 29 § 146, and Law 69, P.R. Laws Ann. tit. 29 § 1321. These statutes prohibit gender and sex-based discrimination in the workforce. See id. "Indeed, Law 69 is merely an amplification of the principles contained in Law 100." Rodriguez-Torres v. Caribbean Forms Manufacturers, Inc., 399 F.3d 52, 61 (1st Cir. 2005). Law 100's burden-shifting framework provides that: (1) the employee must first show that his or her discharge was not for just cause[21]--if successful, the employee enjoys a presumption that he or she has been the victim of discrimination; (2) the burden of production and persuasion then shifts to the employer to rebut this presumption. Ramos v. Davis

---

that was not signed, and Garcia's argument that somehow this demonstrates pretext. Garcia's argument, as this Court understands it, completely lacks merit and is rejected.

Moreover, Garcia indicates that several other male Costco employees had stolen merchandise at Costco but were nevertheless allowed to continue their employment. Because Garcia does not develop any specific argument as to how this fact rebuts Costco's good-cause showing, it is deemed waived. See Mills v. U.S. Bank, NA, 753 F.3d 47, 54 (1st Cir. 2014) (treating as waived "embryonic arguments").

[21] "'[T]he Supreme Court of the Commonwealth of Puerto Rico determined that, because Law 100 did not define the term 'just cause,' the term's definition would be drawn from an analogous statute--' Law 80." Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998).

& Geck, Inc., 167 F.3d 727, 734 (1st Cir. 1999). Here, because Costco made the showing that it had just cause to dismiss Garcia in the Law 80 context, it follows that "the Law 100 presumption [of discrimination] disappears." Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998) (citing P.R. Laws Ann. tit. 29, § 148). Therefore, Garcia bears "the burden of proof on the ultimate issue of discrimination," meaning that he "must prove that, even if the dismissal was justified, [Costco] nevertheless violated Law 100 because the dismissal was motivated by discriminatory animus instead of or in addition to the legitimate reasons for dismissal." Id. In other words, that the reasons proffered were pretextual.[22] See Pérez, 804 F.3d at 8 n.4 ("[The Law 100] framework follows the Law 80 burden shifting framework" and because "no reasonable jury could conclude that [the employer] lacked cause to terminate [the employee,] . . . to succeed on his Law 100 claim [the employee] must show that [the

---

[22] The district court, after noting that Law 100's presumption of discrimination "was not triggered" because Costco had met its burden of showing that the dismissal was justified, concluded that "the burden shifting analysis ends here." The judge nevertheless provided an analysis "assuming that the presumption of discrimination was triggered," and found that Garcia would in any event lose. (Emphasis added). We pause to note that even where the presumption is not triggered, as was the case here, the analysis does not end there. Instead, as noted, the result is that the employee bears "the burden of proof on the ultimate issue of discrimination." See Alvarez-Fonseca, 152 F.3d at 28.

employer's] proffered reason was pretext specifically designed to mask gender discrimination.").

One method of showing that an employer's stated reasons are pretextual "is to produce evidence that the plaintiff was treated differently than other similarly situated employees." Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003) (citations omitted). While the "examples of disparate treatment 'need not be perfect replicas, . . . they must closely resemble one another in respect to relevant facts and circumstances.'" Id. (quoting Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999)). In other words, when comparing the plaintiff's experience to that of other employees, "apples should be compared to apples." Woodward v. Emulex Corp., 714 F.3d 632, 639 (1st Cir. 2013) (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)).

After reviewing the record, we conclude that Garcia's gender discrimination claims under "Law 100 fail because he has not 'proffered sufficient admissible evidence, if believed, to prove by a preponderance of the evidence . . . that the employer's justification . . . was merely a pretext for impermissible [gender] discrimination.'" See Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st. Cir. 1995) (ellipses in original)). In support of his pretext argument, he claims "similarly situated

female employees" were treated differently and cites several examples of employee wrongdoings that went unpunished.[23]

First, Garcia notes that three female employees, including Beatriz Gomez, Rocío Mendez, and Johanne Oquendo, were allowed to continue their employment at Costco after they admitted to authorizing a $95,000 purchase which was later discovered to be fraudulent. Garcia suggests that the monetary amount involved in this incident alone should have been enough to terminate these employees. Even assuming that the employees implicated in the incident were "similarly situated" because of the monetary value of the fraud, a crucial fact, which Garcia acknowledged at deposition but omitted from his brief, is that this incident also involved two male employees who like their female colleagues were not terminated. See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 222 (1st Cir. 2007).

To have a plausible differential treatment claim, Garcia was required to first show that employees of the opposite sex were similarly situated and that he "was treated differently and then that gender was the reason for that difference." Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002) (citations omitted). Given that male employees were also involved, this fraud

---

[23] The examples he cites throughout his brief, however, also involve male employees, are overly broad, do not involve employees "similarly situated," or encompass some combination of these fatal flaws.

- 26 -

incident does little to support Garcia's allegation that he was treated differently than female employees, let alone "that gender was the reason for that difference." Id. Even when viewed in the light most favorable to him, an example involving unpunished male and female employees does not support a finding that he was discriminated against based on his gender.

Second, Garcia maintains that Johanne Oquendo and Rocío Mendez were involved in some sort of "issue with the use and payment of the chemicals," but were allowed to continue working at Costco.[24] Garcia also cites to an incident where Rocío Mendez failed to follow managerial procedure after she observed another employee improperly use Garcia's password to access AS400. We can easily dispose of both examples as Garcia fails to explain exactly how these women were "similarly situated" to him--he provides no detail and no support other than his subjective belief that he was being discriminated against by Costco. See Mariani-Colón, 511 F.3d at 222 (summary judgment affirmed in favor of employer in employee's Title VII discrimination claim because employee's "statements merely reflect [his] 'subjective speculation and suspicion' that he was treated unfairly") (quoting Quinones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006)). His general statements

_____

[24] The district court did not consider this allegation as it held it was not sufficiently supported by the record.

that are not properly supported by the record fail to carry the day.

Prior to the inventory discrepancies and Garcia's termination, Garcia had been repeatedly promoted by Costco and "[t]here were no statements or behaviors by [Costco agents] involved in terminating [Garcia] from which an inference of discrimination could be drawn."  See Rivas Rosado, 312 F.3d at 534.  The evidence presented at summary judgment would not permit a reasonable jury to find that Garcia had carried his burden of proof on the ultimate issue of discrimination.  After taking a fresh look ourselves, we conclude that the district court did not err in dismissing with prejudice Garcia's gender discrimination claim.

## D. Retaliation (Law 69)

Moving along, Garcia alleges that his discharge was an act of retaliation after he complained to Costco agents that he was being treated differently than his female co-workers--recall he told Dempsey, Soto, and Farano during the inventory investigation that Beatriz Gomez, Rocío Mendez, and Johanne Oquendo were not disciplined after engaging in similar alleged misconduct.  Law 69, P.R. Laws Ann. tit. 29 § 1340, contains a retaliation provision that mirrors one of its federal law counterparts under Title VII.  The statute provides, in relevant part, that: "[i]t shall be an unfair labor practice for an employer

. . . to dismiss or discriminate against any employee or participant who files a complaint or charge, or is opposed to discriminatory practices. . . ." P.R. Laws Ann. tit. 29 § 1340. To prove a claim of retaliation, Garcia must first establish a prima facie case, including that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004). "[I]nformal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal changes," are instances of protected conduct. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015).

Garcia maintains that "the facts demonstrate that prior to his unlawful termination, [he] grieved of gender based disparate treatment" by Costco and that the temporal proximity--being fired just seven days after he last grieved--may alone create the causal connection "between the firing and the activity because it is strongly suggestive of retaliation." See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 49 (1st Cir. 2010) ("[O]ur law is that temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation.")

(quoting DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)). Here, though, any probative force of the chronology is belied by the fact that the allegation of discrimination itself only came in response to Costco's accusation of a defalcation that was itself the cause for the discharge that ensued. See Germanowski v. Harris, 854 F.3d 68, 74-75 (1st Cir. 2017). For purposes of this appeal, we will nevertheless assume without deciding that Garcia has produced adequate evidence to establish a prima facie case. See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); see also Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 67 (1st Cir. 2008) ("For simplicity's sake, we assume without deciding that the plaintiff established a prima facie case . . . .").

Taking it from there, the burden then shifts to Costco to articulate a legitimate, non-retaliatory reason for its action. See Collazo, 617 F.3d at 46 (citation omitted). Given Costco's reason for discharging Garcia--the inventory discrepancy--as discussed in detail above, Costco has met this burden. Having been successful, "the burden shifts back to [the plaintiff] to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Id. (quoting Roman v. Potter, 604 F.3d 34, 39 (1st Cir. 2010)).

Garcia has presented no evidence by which a reasonable jury could conclude that Costco's proffered reason for terminating him was mere pretext and that his termination "was the result of the defendant's retaliatory animus." Id. (quoting Roman, 604 F.3d at 39) (summary judgment for the employer inappropriate in retaliation claim where employee had "submitted evidence from which a reasonable jury could conclude that the purported company reorganization was not the real reason for his termination"). The only record evidence Garcia points to in support of his retaliation claim is his own deposition statement wherein he states his belief that he was "dismissed unjustifiably" and that Costco "took reprisals" against him because he noted "that they had done nothing against [other employees]." Garcia failed to present any evidence to support these "conclusory allegations." See Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007) ("Even in retaliation cases, where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.") (internal quotation marks omitted). Having failed to present "significant probative evidence tending to support [his] [retaliation] claim[,]" we are satisfied that summary judgment in favor of Costco on Garcia's retaliation claim was appropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## E. Defamation

Garcia's final arguments address his defamation claims. He contends the judge erred in dismissing his claims and in concluding that Costco's communications to others were covered by the qualified privilege of intra-business communications. In Puerto Rico, "[t]he protection against defamatory or libelous expressions has three sources." Giménez Álvarez v. Silen Maldonado, 131 P.R. 91, 97 (1992). First, the Constitution of the Commonwealth of Puerto Rico, Art. II, § 8; second, the Libel and Slander Act, P.R. Laws Ann. tit. 32 §§ 3141-3149; and third, Civil Code § 1802, P.R. Laws Ann. tit. 31 § 5141. Id. at 97-98 (citations omitted).

A defamation claim based on all three sources of Puerto Rico law "requires that the plaintiff prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 98 (1st Cir. 1996) (quoting Mojica Escober v. Roca, 926 F. Supp. 30, 33 (D.P.R. 1996)); see P.R. Laws Ann. tit. 32 §§ 3142-43. "[P]ublication" is an essential element of the claim and can be met "when the defamatory statement is communicated to a third person, that is, someone other than the person defamed." Porto y Siurano v. Bentley P.R., Inc., 132 P.R. 331, 347-48 (1992).

In Porto y Siurano, the Supreme Court of Puerto Rico discussed the publication element in the corporate context. Id. at 348.

As at issue here, communications within an organization "among 'managers or supervisors of a discharged employee, regarding the reasons for'" an employee's discharge are covered by a conditional privilege. Soto-Lebrón v. Fed. Express Corp., 538 F.3d 45, 63 (1st Cir. 2008) (quoting Porto y Siurano, 132 P.R. at 353-54). Because the privilege is conditional, it is lost if the employer abuses it by giving the statement "excessive publicity" or by publishing it for "improper reasons." Id. The privilege also vanishes if the publication is made to one whom there is no reason to believe will protect the author's interest or the community's. Porto y Siurano, 132 P.R. at 354.

Garcia argues that the district court twice erred, first by ruling that Costco's publications were subject to privilege; according to Garcia, Costco "abused its conditional . . . privilege by publicizing defamatory statements to other [Costco] employees who had no right to know about Garcia's termination of employment." Second, Garcia argues that he "proffered evidence to prove malice," as the statements "were made with knowledge of falsity and reckless disregard as to their truth."

We agree with the district court's conclusion that Garcia's allegations in support of his defamation claims "are the textbook definition of 'conclusory.'" As the district court noted,

- 33 -

all that Garcia put forth fell into three groups: "(1) conversations that he sustained with his superiors as part of the investigation into the inventory discrepancies;" "(2) alleged information relayed . . . by . . . other Costco employees" (including Garcia's father-in-law who worked at Costco); and "(3) two emails sent by Jerry Dempsey to Yoram Robanenko and David Soto" accusing Garcia of altering company documents.

As it relates to group one conversations--Garcia's superiors accusing him "of negligence, lying, stealing merchandise[,] and of manipulating inventory and its data[,]"-- clearly these communications are intra-business communications covered by the qualified privilege. See Porto, 132 P.R. at 354-55. Garcia has failed to present any evidence to support his allegation that the privilege was lost due to "excessive publication" or that any publication was made for "improper reasons." See Soto-Lebrón, 538 F.3d at 63. As the nonmoving party at the summary judgment stage, Garcia was tasked with providing more than mere allegations; he was required to "set forth specific facts showing that there [were] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (quoting Fed. R. Civ. P. 56). Garcia has failed to meet his burden.[25] Furthermore, even if the

---

[25] In granting summary judgment the district court expressed that "other than his own averments, [Garcia] has not shown that the statements in question[] damaged his reputation or honor." We pause to note, however, that to the extent the statements are that

conditional privilege had been lost, Garcia cannot meet the publication element required because these accusations were communicated to him, not to third parties.  See Porto y Siurano, 132 P.R. at 347.

Moreover, as it relates to the remaining groups two and three statements--those purportedly made by Costco managers to employees, which eventually made their way to Garcia--we agree with the district court that they "are based on nothing more than hearsay and gossip, and, as such, do not provide a solid basis for a defamation claim."  Garcia presented no supporting affidavits or deposition transcripts from the individuals who allegedly learned these defamatory statements from Costco managers.  The deposition transcript of Israel Echevarría-Nieves (Garcia's father-in-law), which accompanied Garcia's objection to Costco's motion for summary judgment, does not provide any support for Garcia's allegations.  Echevarría-Nieves (like we mentioned earlier), an

_____

Garcia is a thief, he would not be required to establish harm. See González Pérez v. Gómez Aguila, 312 F. Supp. 2d 161, 174 (D.P.R. 2004) (citing Pérez-Rosado v. El Vocero de Puerto Rico, 149 P.R. 427 (1999)) ("[T]he Puerto Rico Supreme Court has held that publications in which the commission of a crime is imputed are considered libelous per se.").

employee at a separate Costco store, noted that his manager, Rafael Reyes, asked him what he thought had occurred at store #365 but that he didn't have an answer for him. According to Echevarría-Nieves, his manager said that prices were inflated and that numbers did not match, and that Garcia "had no reasoning or answer to that;" "that it appeared that it was either they had stolen the merchandise or they had inflated the inventories." When specifically asked whether Reyes had told him that Garcia had stolen the merchandise, Echevarría-Nieves responded: "No. [Reyes] just said that he didn't understand how something like that could've happened." Not only is this statement hearsay, even if it were admitted and accepted, it readably does not support Garcia's claims. See United States v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 61 (1st Cir. 2013) ("[I]t 'is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted[.]'") (quoting Kenney v. Floyd, 700 F.3d 604, 609 (1st Cir. 2012)).

Accordingly, even viewing the evidence in the light most favorable to Garcia, he has completely failed to present any triable issue relating to his defamation claims to survive summary judgment. Accordingly, we affirm the entry of summary judgment in favor of Costco.[26]

---

[26] Garcia also claims that the district court erred by not separately addressing his constitutional causes of action. While

- 36 -

**AFFIRMED.**

_____

Garcia attempts to characterize his constitutional claim as an independent claim, what he alleges--that his "dignity was transgressed and utterly violated resulting from Costco's continuous badgering and hostile working environment in calling him a thief and a liar"--sounds like defamation. "[M]erely relabeling [his] arguments does nothing to advance them." Coors Brewing Co. v. Méndez-Torres, 678 F.3d 15, 27 (1st Cir. 2012); see Brown v. Hearst Corp., 54 F.3d 21, 27 (1st Cir. 1995) (restatement of a defamation claim as a "false light" privacy claim merited no independent discussion). Moreover, Garcia does not specify in his constitutional argument exactly who made the statements and to whom the statements were made. On top of that, in his filing to the district court, and again in his brief to us, Garcia quotes a Puerto Rico Supreme Court case, Garcia Benavente v. Aljoma Lumber, 2004 T.S.P.R. 125 (2004), in support of his argument that his constitutional claim should stand even though his defamation claim failed, but Garcia "has not provided a translation as required by this court's rules." Hoyos, 488 F.3d 1, 6 (citing 1st Cir. Loc. R. 30[e]). As such, "the case may not be used to support his position." Id. (citing López-González v. Mun. of Comerío, 404 F.3d 548, 552-53 n.4 (1st Cir. 2005)). For all these reasons, we affirm summary judgment in favor of Costco on Garcia's constitutional claims. We also reject Garcia's argument that Costco has waived any defense regarding his constitutional claim.